## Gilbert, et al. v. Parrott.

(Decided February 22, 1916.)

### Appeal from Knox Circuit Court.

1. Ejectment—Title to Support Action.—A plaintiff in a suit of ejectment, or a suit for trespass, when his title is denied, must recover on the strength of his own title and cannot rely upon the defective title of the defendant.

2. Boundaries—Courses and Distances—Interpretation of Deeds.— Courses and distances in the interpretation of deeds when there is a conflict should surrender to natural objects mentioned in the deed, and when there are two or more natural objects contended for that one will be adjudged the correct one which conforms to the apparent intention of the parties and accords practically with the courses and distances, as well as the quantity of land conveyed.

3. Boundaries—Courses and Distances—Natural Objects.—The courts will not adopt a natural object, sought to be established by parol, as a beginning corner, when to do so would result in ignoring the courses and distances mentioned in the deed and in the conveyance of much more land than was specified in the deed.

4. Adverse Possession—Constructive Possession—Boundaries.—Constructive possession to a well-defined marked boundary of a tract of land resulting from an actual possession of a portion of the

tract with a claim to the marked boundary, will not be extended beyond the marked boundary so as to cover an adjoining tract with a different chain of title purchased by the occupant subsequent to the purchase of the first tract, a portion of which he is in the actual possession. In order for him to have constructive possession of the second tract to its boundaries, to ripen into title by adverse possession of such tract, he must have been in the actual possession of a portion of it with a claim to its marked and defined boundaries for the statutory period.

BLACK, BLACK & OWENS and J. P. HOBSON & SON for appellants.

J. M. ROBSION for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

About thirty years ago, the exact date not being shown by the record, Wallace Gilbert died intestate, residing in Knox county, Kentucky. He left surviving him as his only heirs the appellants, Mary J. Gilbert, his widow; Samuel J. Gilbert, John Gilbert, Susan Gilbert and Mary J. Black (nee Gilbert). The latter is the wife of appellant, James T. Black. It is claimed in the petition that at the time of the death of Wallace Gilbert, he was the owner of a tract of land in Knox county, situated on Big Richland creek and described as follows: "Beginning at a beech in the upper corner of land now owned by Peter Hammons; thence east 80 poles to a stake; thence south 250 poles to a stake; thence west 80 poles to another line of land formerly owned by the said Hammons; thence to the beginning and containing about 100 acres."

As the heirs of this land the appellants filed this suit in the Knox circuit court on the 19th day of May, 1911, against appellee, Charles Parrott, in which they allege that the defendant had committed trespass upon said tract of land by going thereon and cutting timber and appropriating it to his own use, and alleging that the amount of timber so taken was $300.00, for which they prayed judgment against him. The answer is a traverse of the petition and especially so as to the plaintiff's ownership of the land from which the timber was taken, and in a second paragraph it is alleged that the defendant was himself the owner of the land from which he took the timber, both by title from the Commonwealth and by adverse possession. These allegations

were denied, and upon the trial, in which a great deal of testimony was taken, the jury returned a verdict for the defendant, and complaining of this, this appeal is prosecuted.

Many errors are urged before us as grounds for a reversal, but according to the view which we take of this record, a number of them will not require consideration.

In an effort to establish their title to the tract of land, the plaintiffs introduced a patent issued by the Commonwealth of Kentucky to William North on the first day of June, 1797, which patent covered a survey supposed to contain 5,000 acres. For several years after the issuing of such patent, the patentee, North, failed to pay taxes on the land, and for the purpose of collecting the unpaid taxes 2,500 acres of this tract was sold on the 23rd day of November, 1804, by the then register of the land office, John Adair, at which sale one John Ballinger became the purchaser of the 2,500 acres sold. He assigned his bid to one John Logan, and the latter again assigned it to one John Rigal, and on September 2, 1817, John W. Foster, who was then register of the land office of the State of Kentucky, executed a deed to John Rigal for the 2,500 acres of land, and the tract of land involved in this suit is a part of this 2,500 acres. John Rigal deeded to Peter Hammons the tract of land in controversy on the 28th day of June, 1830, and the description in such deed is exactly as it is in the petition as copied above. Previously to the execution of this deed from John Rigal to Peter Hammons, the latter had purchased other lands from Henry Banks, which adjoined the Rigal land on the west. This deed from Banks to Hammons was of date December 6, 1824, and the description of the land therein is as follows: "Beginning at a hickory and running thence 42 E. 50 poles to another hickory; thence N. 24 E. 32 poles to a stake; thence N. 15 E. 36 poles to a stake; thence N. 25 W. 112 poles to a poplar and lynn; *thence N. 87 E. 40 poles to a beech;* thence S. 8 E. 157 poles to a stake; thence to the beginning; thence from the poplar and lynn N. 267 poles to a stake; thence E. 20 poles to a stake; thence S. 2 E. 264 poles to a stake called for in the above square on the beginning of the same." It will be noticed that the fifth call in the deed of Banks to Hammons reads: "Thence north 87 east 40 poles to

a beech," and the succeeding, or sixth call, is: "Thence south 8 degrees, east 157 poles to a stake," followed by the last call running to the beginning. It will also be noticed that in the Banks deed there is a second tract of land conveyed to Hammons beginning at the "poplar and lynn corner" mentioned in the first tract described in that deed.

This controversy arises principally over the location of the beginning point in the description of the land conveyed on June 28, 1830, by John Rigal to Peter Hammons. This point is, as will be seen from the Rigal deed, "at a beech in said Hammons' upper corner," and it is the contention of the defendant that this point is at the termination of the fifth call of the Banks deed running from the *poplar and lynn* corner north 87, east 40 poles to a beech, and this beech corner constituted "said Hammons' upper corner;" while it is the contention of plaintiffs that the "beech in said Hammons' upper corner," constituting the beginning point of the description in the Rigal deed, is located something like 100 poles from the poplar and lynn corner and on a bearing of about north 35 degrees east from it. So that to reach the point contended for by appellants as being the beginning beech corner of the Rigal deed, the fifth call in the Banks deed, instead of reading as above, would have to read: "Thence north 35 east 100 poles to a beech;" and to thus locate the beginning corner of the Rigal deed would make the tract of land conveyed by Rigal to Hammons contain, instead of 100 acres, something like 150 acres. It would furthermore leave a strip of land between the Banks tract conveyed to Hammons in 1824, and the tract conveyed by the Rigal deed to Hammons in 1830, which is contrary to the plain intention manifested by the Rigal deed when, in the third call thereof, it runs "80 poles back to Hammons," and in the fourth call, "from that point to the beginning," which is the "beech" in said "Hammons' upper corner;" for, there is nowhere shown that Hammons ever had by any conveyance any upper beech corner except the one located "north 87 degrees east 40 poles from the *poplar and lynn* corner" in the Banks deed.

It is the well settled rule that in construing deeds and in locating lines and corners in the description of the land conveyed courses and distances surrender to natural objects. Devlin on Deeds, section 1029; Dupoy-

ster v. Miller, 160 Ky., 780. But, for this rule to find application, the natural object mentioned in the deed must first be definitely located, and where there is a dispute as to the location of this natural object and the proof shows two or more natural objects which might fill the designation that one is to be accepted which appears to carry out the intention of the parties in making the deed and which most nearly conforms to the courses and distances, as well as conforms to the quantity of land proposed to be conveyed. There is some testimony in behalf of plaintiffs tending to show that Peter Hammons claimed his upper beech corner (being the beginning corner of the Rigal deed) to be located at the point contended for by them; but this testimony rests entirely in parol and to so locate that corner would not only do violence to the manifest intention of the parties to the Rigal deed, wherein it is to be gathered therefrom that the last call should be in the line of Peter Hammons', but it would also be doing violence to the other calls in that deed and result in conveying at least 50 per cent. more land than therein expressed. Moreover, it is shown indisputedly by the testimony that there is no beech located at the point contended for by plaintiffs, nor has there been one for more than thirty years, if then; nor is there any stump or other indication of any beech having ever been located there. It is true that something like 8 or 10 poles south of that point, there is a standing beech, and another one down, but these beeches were in a conditional line, which for many years had been the agreed line between Peter Hammons and Jerry Hammons, and so far as we are able to detect, has nothing to do with this controversy more than a circumstance to show that these beeches do not form the beginning corner of the Rigal deed, and therefore do not constitute the beech corner contended for by plaintiffs.

We are not inclined to allow this oral testimony, weakened as it is by the absence of any growing beeches, or indications of same, to locate the beginning beech corner of the Rigal deed so at variance with the course and distance of the fifth call in the Banks deed from the *poplar and lynn* corner in that deed.

At the point where there is a standing beech and another one down, marks are to be found on them, but this cannot be accepted as fixing the beginning corner of appellants' land, not only because of the conditional line

between Jerry and Peter Hammons, hereinbefore mentioned, causing these trees to be marked, but because of other conveyances made as shown by the record, but not necessary to consider in the determination of this case, as they do not relate thereto.

The beeches designated as being located "north 87 east 40 poles" from the *poplar and lynn* corner in the Banks deed, are marked, not only as line trees, but corner trees.

From the testimony in the case and governed by the rules of law for the interpretation of deeds, we are thoroughly convinced that the beginning corner of the Rigal deed, describing the land claimed by the plaintiffs in their petition, is as contended for by the defendant, which, being so, would leave the land upon which the trespasses were complained of, entirely without the boundary of plaintiffs.

It is claimed, however, that in 1871, Wallace Gilbert purchased from the heirs of W. P. Hale their interest in lands covered by a patent, obtained by Hale in 1859, for 500 acres, which covers the land lying north of the 100 acres described in the petition as herein determined, and that because of this purchase, as well as the contention hereinbefore considered, their claim extended sufficiently north of the Rigal tract to cover the land in controversy from which the timber was taken by defendant, and that they are therefore entitled to recover.

In reply to this it may be said: First—That it is extremely doubtful if this Hale patent covers any part of the land alleged to have been trespassed upon, and, Second—the Hale patent, in so far as it seeks to affect the land in controversy, is void, as the land at that place had been previously patented by William North, as hereinbefore seen. Third—There is no testimony that there has ever been an actual settlement by the Gilberts upon any part of this Hale patent, and under a well settled rule, their actual possession under the Rigal deed could not extend their constructive possession beyond the boundaries thereof to the lines of another and different survey acquired at a different time and from different parties. An actual occupant of a portion of the land may thereby have constructive possession to the well defined and marked boundaries of the entire tract so as to hold all of it adversely, but this constructive possession cannot be extended beyond the boundaries of the

tract so as to include land subsequently purchased by the occupant from a different vendor and having a different chain of title. To give title by adverse possession of the latter tract there must have been an actual possession of some portion of it claiming all of it to its well defined and marked boundary .for the statutory period. Trimble v. Smith, 7 Ky., 257; Smith v. Mitchell, 4 Bibb., 257; Wilson v. Stivers, 34 Ky., 634; Jones v. McCauley, 63 Ky., 15; Swafford v. Herds' Admr., 23 Ky. L. R., 1566; Hendrickson v. Linnville, 31 Ky. L. R., 967; Goff v. Low (Ky.), 107 S. W., 794; Brown v. Wallace (Ky.), 116 S. W., 764; Steel v. Bryant (Ky.), 116 S. W., 755; Chattaroi Timber & Cannel Coal Co. v. Licking Coal & Lumber Co. (Ky.), 116 S. W., 682; Bowling v. Breathitt Coal, Iron & Lumber Co., 134 Ky., 249. Moreover, the writings obtained from the heirs of Hale by Wallace Gilbert purporting to convey, describe no lands, nor are any of them acknowledged by anybody. They cannot in any sense be construed to be deeds to land with any defined boundary, and the only purpose which they can serve would make an occupancy under them be with color of title and would perhaps be evidence as against the Hale heirs in a contest between them and Gilbert, or his heirs.

The instructions of the court, in so far as they attempted to submit to the jury title by adverse possession, were erroneous, in that they failed to define adverse possession as being an actual occupancy of some portion of the land and "claiming it to a well defined marked boundary line." The quoted clause was omitted from the instructions, which was clearly erroneous. However, having reached the conclusion that plaintiffs in no view of the case showed title to the land in controversy, the error in the instruction was not prejudicial to them, and this fact also renders it unnecessary to consider the title of the defendant, under the well recognized doctrine that in cases of this character the plaintiff must succeed on the strength of his own title. Whatever, therefore, may be the defects, if any, in the defendant's title to the premises trespassed upon, it cannot avail the plaintiffs in this suit.

It results, therefore, that the judgment is correct and it is affirmed.