## Rush v. Cornett.

### (Decided April 27, 1916.)

## Appeal from Perry Circuit Court.

1.   Boundaries—Description—Location of Lines.—In locating land
     from the description in the title paper, in a conflict between
     courses and distances and natural objects called for, the latter
     should prevail over the former.

3.   Boundaries—Description—Location of Lines.—Where one of the
     calls in the patent is for a chestnut on top of the mountain and
     to make this point one of the corners, preserves all of the
     courses and distances as well as natural objects at other corners
     except the course of one call, the court will adopt as the correct

plat that described as running to the corner at the chestnut on top of the mountain rather than adhere to the calls according to their courses, whereby none of the natural objects would be reached, nor would any corner be located on top of the mountain.

3. Joint Tenancy—Adverse Possession.—In order for one joint tenant to hold adverse possession of the joint property as against his co-tenants, his possession must not only be of the character required by the law as against a stranger, but it must also be shown that the joint tenant against whom the adverse possession is held knew of, or was informed, not only of the adverse possession of his co-defendant, but that it was accompanied with a claim of title as against him.

4. Joint Tenancy—Action Against Trespasser—Recovery.—One joint tenant may not in his own name sue a trespasser to recover damages to the property, but if this is done and no objection is taken to it by the defendant in any of the methods pointed out by the law, the plaintiff's suit upon appeal will not be ordered dismissed, but that the judgment shall be reduced so as to include only his aliquot part of the damages.

5. Joint Tenancy—Injury to Property—Action for Damages.—Although a joint tenant may not sue in his own name to recover a money judgment for damages to the joint property as above indicated, still he may prosecute even in his own name preventive remedies looking to the preservation of the joint property, and an injunction granted to prevent future trespasses to the joint property in a suit instituted by only one joint tenant will not be disturbed on appeal because of other joint tenants not having been made parties.

HOGG & JOHNSON and W. H. MILLER for appellant.

P. T. WHEELER, WOOTTON & MORGAN, BAILEY P. WOOTTON and JESSE MORGAN for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing in part and affirming in part.

This suit was brought in the Perry circuit court by Arch Cornett against the appellant, C. C. Rush, as defendant, to recover from him damages for trespassing upon a tract of land consisting of 400 acres lying in Perry county, which tract was patented to one Sampson Brashears by the Commonwealth of Kentucky on August 27, 1846, the plaintiff claiming that he purchased the land from the heirs of the patentee by deed which was executed to him on the 17th day of February, 1883. He also claimed title by adverse possession. Both these characters of title were denied in the answer, and it is affirmatively alleged therein that the land upon which the

trespasses were committed belonged to the heirs of William Duff, and that the defendant, under some character of lease from them and with their permission and consent, had taken the timber, constituting the trespasses sued for. This was denied by reply and upon trial judgment was rendered in favor of plaintiff for the value of the timber, which was fixed by the court, at $600.00. An injunction was also asked in the petition against the defendant to prevent him from committing further trespasses, and upon the trial the injunction was granted. To correct the errors claimed to have been committed by the trial court, the defendant prosecutes this appeal.

Since the taking of the appeal, the plaintiff, Cornett, has died, and proper orders of revivor in the name of his heirs as appellees, have been taken in this court.

The principal question in the case, as to the plaintiff's right to recover any sum, is the correct location of the 400-acre patent issued to Sampson Brashears, and this is dependent upon the language used in the patent in giving a description of the land. From the beginning to the closing there are twenty calls in the patent, constituting as many corners thereto. From the beginning to the twelfth corner there is no dispute between the parties, they each agreeing that these are correct. After leaving the twelfth corner, the patent reads: ''Thence N. 46 W. 230 poles to a stake; thence S. 37½ W. 82 poles to a black gum; thence N. 17 W. 78 poles to a stake; thence N. 49 W. 54 poles to a stake; thence S. 15 W. 46 poles to a chestnut and maple; thence S. 73 W. 24 poles to a chestnut *on top of the mountain*; thence S. 33 W. 40 poles to a stake; thence S. 13 E. 186 poles to a stake; thence S. 44 E. 100 poles to the beginning.''

It will be noticed that the thirteenth call running to the fourteenth corner calls for a black gum, and that the sixteenth call running to the seventeenth corner is to a chestnut and maple, and the seventeenth call running to the eighteenth corner is ''to a chestnut *on the top of the mountain.*'' It is the contention of appellees that these natural objects should be observed rather than the courses and distances, and there is no rule more familiar to the law than the one for which they contend. (Devlin on Deeds, sec. 1029; Dupoyster v. Miller, 160 Ky. 780; Gilbert v. Parrott, 168 Ky. 599.) But for this rule to apply the natural objects called for in the description should themselves be definitely located. (Gilbert v. Par-

rott, *supra*.) Each of the parties have filed a map with the record which they claim clearly locates and represents the 400-acre patent in controversy. To adopt the one filed by appellees would include the land upon which the trespass was committed, but to adopt the one filed by appellant the land trespassed upon would be excluded. The testimony shows that at the point of the fourteenth corner upon each of them is a black gum and each of these is marked and designated as a corner tree although they are situated about one-half mile apart. On defendant's map, however, from this point on, according to the testimony, there is no natural object designated as a corner at any of them where called for in the description given in the patent, nor is the eighteenth corner of the map filed by him and claimed to be correctly located, "on top of the mountain," as called for in the patent. On the contrary, it is about two-thirds of the way down the side of the mountain. To locate the patent as contended for by appellees and as shown on the map furnished by them, the natural objects called for in the description of the land in the patent are all found after leaving the twelfth corner and practically as located by the courses and distances of the patent after leaving the thirteenth corner which is a stake corner. However, to adopt this as the true location, the course between the twelfth corner and the thirteenth corner will have to be radically changed, this change being so as to read "N. 11-40 W.," instead of "N. 46 W.," as called for in the patent. And the question is, should a change of this magnitude from the courses in the patent be adopted in the observance of the rule *supra?* It is perfectly plain that the reason for the adoption of the rule is the certainty of the permanency of location of natural objects, and the possibility of mistakes by the surveyor in the measuring of distances and in recording the courses on his field notes in making the survey.

Illustrating with the discrepancy between corners twelve and thirteen in the case before us, where the surveyor recorded "N. 46 W.," a slight slip in the instrument used in making the field notes may have caused the figure one to be afterwards read and copied as a figure four; which then would have read "N. 16 W.," instead of "N. 46 W." If this had been done, all the difficulty in this case would be removed, because allowing for the

known variation of the needle from the seventy years since the survey was made, the call would now be practically what it is claimed by appellees, i. e., N. 11-40 W. It is because of such possibilities, growing out of the imperfections of humanity, and its liability to err, that natural objects are by the law allowed to prevail over courses and distances. As stated, there is but one corner called for in the patent, after leaving the twelfth one, on defendant's map, which is marked by the natural object called for in the patent, it being the fourteenth one. It is also not to be forgotten that the eighteenth corner called for in the patent is not only a chestnut, which is a natural object, but it is stated to be "on top of the mountain." And, although there should be a chestnut at the eighteenth corner, as claimed by appellant, suiting the description in the patent, still unless it was located *on top of the mountain,* or practically so, it could not possibly be the one called for in the patent at this point. By showing a chestnut to be at this corner, or near there, and on top of the mountain, appellees, at least in this respect, have produced testimony "mountain high" in support of their claim. Furthermore, a number of witnesses living in the immediate neighborhood testify as to the corners claimed by appellees and their long recognition as such by the patentee, Sampson Brashears, as well as by at least some of the witnesses who have known the land a great number of years. On the contrary, there is no witness found claiming the corners to be located as appellant now does, and no witness ever saw or knew of the black gum at the fourteenth corner of his map until after this suit was brought. To locate the land as claimed by appellees requires practically no change in the description of the patent except the line between the twelfth and thirteenth corner, which is only in its course and which we have considered. Giving, therefore, the force to the rule, *supra,* to which in law it is entitled, and also due weight to the judgment of the chancellor who tried the case, we are inclined to adopt his finding as the true location of the patent in controversy. This being true, it results that the trespasses complained of were committed on the land in controversy.

It is disclosed by the record that the deed to Arch Cornett, executed to him on the 17th day of February, 1883, purporting to convey to him all the land covered

by the patent issued to Sampson Brashears, was not executed by but only four of the nine heirs of the patentee, Sampson Brashears, and there was never conveyed or attempted to be conveyed to him any interest in the land except this four-ninth undivided interest. It is true that it is attempted to be claimed that Sampson Brashears executed a will devising this land to the four heirs who signed the deed, but no such will was ever probated, and in fact there is no satisfactory testimony that it was ever executed. It is therefore perfectly manifest that no force can be given to it, as it is primary law that an unprobated will transfers no title. Nor is there any evidence, as claimed, that these five heirs who failed to sign the deed received advancements from their father equal to a one-fourth interest in the 400-acre patent. But if such was shown to be a fact, it would not alter the title which Arch Cornett obtained by his deed and could not serve his purpose in a litigation about the land with a stranger. It therefore results, that unless the title to the five-ninths undivided interest in the land which was not conveyed to him has been obtained in some other way, appellees have failed to show a complete title to the land in controversy.

It is insisted that upon the execution of the deed in 1883 by the four heirs, the grantee therein took possession of the tract of land, upon which there was a small clearing, and has continued to claim it to its well-defined and marked boundaries continuously since then, and that he, therefore, had title by adverse possession. Under the facts proven, this would be true as to a stranger attempting to assert title, but the rule is altogether different as to what constitutes adverse possession as against a co-tenant. In that instance the occupant must not only be in the actual possession of the land claiming it to a well-defined, marked boundary and that such possession is open and notorious and with a claim in himself to all of it, but these facts must be known to his co-tenant in order to eventually ripen the possession of the claimant into title in himself. Hamilton v. Steele, 117 S. W. (Ky.) 378; Vermillion v. Nickell, 114 S. W. (Ky.) 270; Kidd v. Bell, 122 S. W. (Ky.) 232; Winchester v. Watson, 169 Ky. 213; Johnson v. Meyer, 168 Ky. 432, and other authorities to be found in these cases.

There is no proof tending to show that the four heirs who deeded this land in 1883 were in possession of it or claiming it in the manner required by the law as against joint tenants, nor is it shown that Arch Cornett, before his death, held possession in the manner to be adverse as against his joint tenants, the five heirs of Sampson Brashears who did not sign the deed or their descendants. The facts being, as disclosed by the record, that a small portion of this survey was cleared, the greater portion being in virgin forest, with one or two witnesses saying that Mr. Cornett claimed to own it. There is a total absence of testimony showing that any of the other joint tenants were apprised or had knowledge of any such pretended adverse holding. We therefore conclude, that if a recovery is permissible at all, it is for only four-ninths of the damages resulting from the trespasses complained of.

If it had been disclosed by the petition that the plaintiff had title to only four-ninths of the land, a special demurrer would have lain thereto, but inasmuch as this did not appear, a plea in abatement filed by defendant after the facts had been discovered would have been proper. (Frazier v. Spear, 2 Bibb 385). Inasmuch as this course was not pursued by the defendant it is now too late for him to take advantage of a defect of parties; and, we are, under the circumstances, not inclined to disallow a recovery by appellees of their aliquot part of the damages produced by defendant's wrongful acts.

The granting of the injunction against the commission of further trespasses was proper, as one joint tenant in possession can proceed in his name for the protection of the joint property, or to obtain relief looking to its preservation. At any rate, being interested in the joint property, he would be entitled to such preventive remedies as might be necessary to protect his interest.

The judgment awarding $600.00 is reversed, with directions for the court to reduce it to $266.66, and the order granting the injunction is affirmed.