F. DAVENPORT ET AL V. A. M. KELSEY BASS ET VIR.

No. 7610. Decided April 16, 1941.
Rehearing overruled July 16, 1941.
(153 S. W., 2d Series, 471.)

*H. P. Guerra,* Jr., of Rio Grande City, *Strickland, Ewers & Wilkins,* of Mission, *J. W. Timmins,* of Dallas, *J. T. Canales* and *Davenport & Ransome,* all of Brownsville, for plaintiff in error.

Title cannot be acquired by adverse possession of land belonging to the State and the evidence does not warrant the assertion that the land does not belong to the State. Wetherly v. Jackson, 123 Texas 213, 71 S. W. (2d) 259; State v. Post, 106 Texas 468, 169 S. W. 408.

Where field notes of a grant are complete within themselves and do not contain any inconsistent calls, it is not permissible to look to the field notes of another survey in order

to create an inconsistency. Garcia v. State, 274 S. W. 319; Kennedy Pasture Co. v. State, 196 S. W. 287; Turner v. Smith, 122 Texas 338, 61 S. W. (2d) 801.

*L. R. Brooks,* of Rio Grande City, *E. A. McDaniel* and *R. M. Bounds,* both of McAllen, for defendant in error.

The facts and the evidence not being in conflict the fixing of a boundary becomes a question of law. Williams v. Winslow, 84 Texas 371, 19 S. W. 513; Finberg v. Gilbert, 104 Texas 539, 141 S. W. 82.

Where the land in question has been in possession of claimants and their predecessors for many years and the fences have been acquiesed in by all adjoining owners for the same period of time it may be assumed that they are on the true boundary line. Medlin v. Wilkins, 60 Texas 409; Koenigheim v. Sherwood, 79 Texas 508, 16 S. W. 23.

If it not be possible to locate porciones 86 and 87 by their own field notes it is then permissible to go to adjoining surveys or even distance surveys, made at the same time, to determine the location of their boundaries. Sullivan v. Solis, 114 S. W. 456; State v. Dayton Lbr. Co. 159 S. W. 391.

*Gerald C. Mann,* Attorney General, and *Robert Kepke,* Assistant Attorney General, and *Dan Moody,* of Austin, filed briefs as amici curiae.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

Mrs. A. M. Kelsey Bass, joined by her husband, instituted this suit in the District Court of Starr County against F. Davenport and a number of others. The parties will be referred to as plaintiff and defendants.

Plaintiff is the owner of what is known as porciones 86 and 87 of the Ancient Jurisdiction of Camargo. Said two porciones are part of a block of porciones numbered 70 to 100. No. 86 is 1300 varas in width and No. 87 is 1050 varas in width, each extending back some 25,000 varas from the Rio Grande river. Defendant Davenport owns what is known as

Survey No. 934 under an award and sale made of same as public school land April 30, 1920. Defendant Domingo L. Garza owns Survey No. 565, which was patented to John P. Kelsey September 27, 1881. Defendant Garza also owns Survey No. 164 under an award and sale of same as public school land December 17, 1909; which sale was in good standing at the time of the trial of the case.

The real controversy between the parties concerns the true location of the North boundary line of porciones 86 and 87. The surveys under which defendants claim are all junior surveys, and if porciones 86 and 87 be located as contended for by plaintiff there will be a complete conflict between them and Surveys 934 and 565, and a conflict between them and Survey 164 to the extent of about 200 acres.

E. M. Card was the principal witness for plaintiff on the question of boundary. His testimony reflects that he was a compentent and careful surveyor, and we are impressed with the conviction that he disclosed by his testimony all physical facts reasonably ascertainable which tended to reveal the true situation concerning the boundaries in question. The plaintiff, who was appellant in the Court of Civil Appeals, has furnished a reduced copy of the map made by Mr. Cord, and we reproduce same here.

The lines of the various surveys run generally north and south and east and west and for convenience we will refer to them as running that way.

The case was tried before the court without a jury and judgment was entered in favor of defendants. The court fixed the north line of porciones 86 and 87 at the point marked upon the plat as "Line fixed by Court." Plaintiff appealed and the Court of Civil Appeals reversed and rendered judgment in her favor, thereby fixing the north line of porciones 86 and 87 at the point indicated on the map "Line contended for by Appellant." 127 S. W. (2d) 1022.

Briefly, it may be said that the Court of Civil Appeals based its conclusion on the proposition that no evidence whatever existed on the ground indicating the lines and boundaries of porciones 86 and 87, except the presence of old fences

**MAP**
OF SURVEYS
BASS-VERSUS DAVENPORT ET. AL.
CAUSE Nº
DISTRICT COURT STARR COUNTY
*E. M. Board*
SURVEYOR.

along the northern lines of these surveys as contended for by plaintiff; and the conclusion that as these fences have been recognized and acquiesced in by owners of the different surveys, this was sufficient evidence to show location of the lines as a matter of law. We use the word "as a matter of law" advisedly, because the trial court has found as a matter of fact that the lines were at another place. The holding of the Court of Civil Appeals is reflected by the following language of the opinion:

"So, it is our view that the only testimony in the record which tends to fix the true location of the boundary lines in question is the evidence of the fencing by appellants, and long recognition of the line as fixed by their fences. For more than 45 years these fences have been maintained and have been recognized by adjoining property owners as marking the true boundary. Such long use and recognition it seems to us offers the best evidence, and in fact the only available evidence, of the true location of the line. Where time has erased the foot-steps of the original locator so that the true boundary cannot be located from his field notes, then of necessity resort must be had to any evidence which meets the requirement that it is the best evidence of which the case is susceptible. Finberg v. Gilbert, 104 Texas 539, 141 S. W. 82. And fencing and long continued use and recognition of the line on the ground may be looked to as evidence of the true location of the boundary."

Continuing the court said:

"We do not mean to hold in this suit that the long continued use and recognition established the disputed boundaries on the principle of estoppel. There were perhaps certain elements lacking, at least as to some appellees, to invoke that rule. What we do hold is that the undisputed evidence of fencing and occupancy of the land by appellants and their predecessor in title, and the general recognition of the line as so openly fixed by them and by all property owners affected for a long period of years, supplied the best evidence of probative value, as to the true location of the disputed boundaries. And so the evidence conclusively established, as a fact, their true location to be as marked by the old fences."

We are unable to agree with the Honorable Court of Civil Appeals that there is no substantial evidence, other than the presence of old fences, to indicate the true location of the

north line of porciones 86 and 87. On the contrary, we think there is very substantial evidence which supports the finding of the trial court.

All of the porciones 70 to 100, with the exception of Nos. 86 and 87, were surveyed in 1853 by R. C. Trimble, such surveys being in pursuance of an Act of the Legislature of 1852. Porciones 86 and 87 were surveyed by the same surveyor in 1857. The field notes of Nos. 80 to 88, both inclusive, are in the record. They all began on the bank of the Rio Grande river. They mutually tied themselves together by each calling for corners and lines of the preceding survey. They all call for running north from the river to an old road from Rio Grande City of Brownsville, and shown on the map as "Brownsville Road." This road was also once known as the Old Military Road. All of the surveys, except 86 and 87, call for the Old Brownsville Road at varying but definite and fixed distances. Beginning with the west line of 81 on the west these distances are as follows: 1900 varas, 3270 varas, 2840 varas, 2400 varas, 3300 varas, 3440 varas, 4950 varas and 3750 varas. While neither 86 and 87 in their own field notes call for the Brownsville Road, yet 86 is by its calls tied to the east line of 85, and 87 by its calls is tied to the west line of 88.

It is undisputed that the Rio Grande river is a shifting stream and its channel south of the Brownsville road, in the neighborhood of perciones 86 and 87, has changed from time to time. Upon the large map made by Mr. Card there is shown two or three abandoned channels of the river in addition to the present channel. All of the tracings upon the map indicate that from the west line of porcion 81 to the west line of No. 88 the general trend of the river, especially as regards the abandoned channels, was away from the Brownsville road, as is indicated by the distances called for in the field notes set out above. This strongly indicates that these calls were based upon an actual survey. The called distances from the river to this old road are short in comparison to the whole length of the lines, which were approximately 25,000 varas. This would tend to exclude the idea that any considerable mistake in distance could or would have been made in the calls for the river north to the road.

The trial court fixed the north line of the two porciones in question by the call for the distance north from the Brownsville road. After mature consideration, we have concluded

that the court was correct in adopting the calls for this road as the most certain and best evidence from which to locate the north lines of these two ancient surveys.

1 There is no controversy between the parties concerning the location of the lateral lines of these surveys, and particularly the east line of 85 and the west line of 88. There is therefore no uncertainty as to where these lines crossed the Brownsville road. We may assume for purposes of this decision that these numerous calls for the Brownsville road are "passing" or "incidental" calls and not strictly "locative" calls. We may say, however, that the fact all surveys called for this road on both the east and the west boundary lines, at a time when this road was no doubt an outstanding feature of the locality, strongly tends to show it was regarded as of considerable locative value. We may assume further that ordinarily passing calls are not entitled to the dignity of some other calls when such other calls are found with certainty. Cockrell v. Work, 94 S. W. (2d) 784, 794, and authorities there cited. But it has never been held that passing calls are not entitled to probative weight, and especially when they become, as is sometimes the case, the best available evidence.

It is undisputed that no evidence of the footsteps of the surveyors can be found at the northern portion of porciones 86 and 87, and there is no evidence tending to show the location of these lines at the point claimed by plaintiff, other than is furnished by the presence of the old fences. We should, however, in this connection make note of the fact that there were also calls in most of the field notes for the Corpus Christi road. As we understand the position of plaintiff, it is not seriously contended that this road, as marked upon the plat, furnishes a certain and reliable basis for locating the north lines of Nos. 86 and 87. It will be noted that the Court of Civil Appeals wholly disregarded this road, as well as the effort to locate Nos. 86 and 87 by course and distance from the N. W. corner of porcion No. 81, as being without probative force. We think this was correct. To use the Corpus Christi road, as delineated on the map, as a basis for locating the north lines of 86 and 87 would bring about serious conflict in the field notes of these surveys. In the first place, the distances from the road as there located to the north lines of the several porciones would not be as called for, although in some instances

approximately correct. In the next place, to locate the Corpus Christi road as indicated causes an excess in the distance between the Brownsville road and the Corpus Christi road as called for of 3107 varas, as indicated by Mr. Card on his map. Further, it is shown that the field notes of No. 84 calls for its northwest corner to be 985 varas south of the N. E. corner of 83. Instead of adopting this call, Mr. Card made the N. W. corner of 84 the same as the N. E. corner of 83, and made the N. E. corner of 84 at the point indicated on the map "High Hill." This necessarily had the effect of extending all surveys to the east 985 varas farther north than called for by the field notes. In addition to all this, if the lines in question be located as contended for by plaintiff, it will extend the distances called for some 4000 varas, and increase the acreage called for in Nos. 86 and 87 some 1500 acres. On the other hand, if the north lines of these surveys are fixed as found by the trial court, they will still have their full acreage.

**2** In this connection we think it a safe rule that if there be calls for two or more objects, as, for instance, different roads, and it becomes necessary to adopt one or another of said calls, that one will be adopted which most nearly conforms to the courses and distances, as well as the quantity of land granted. Gilbert v. Parrott, 168 Ky. 599, 182 S. W. 859, 861; Zielbold v. Foster, 118 Mo. 349, 24 S. W. 155; Post v. Wilkes-Barre R. R. Co., 286 Pa. 273, 133 Atl. 377. It follows, therefore that as between the calls for these two roads those for the Brownsville road are far more certain and reliable.

We are brought, therefore, to the proposition that aside from the effect to be given to the presence of the old fences relied upon by plaintiff, the only evidence furnished by the filed notes themselves upon which we may rely are the calls for the Borwnsville road. It is true it is not called for in the field notes of 86 and 87, yet the field notes of 86 make the east line of 85 its west line, and there is a call in 85 for the road. The field notes of 87 make its east line the same as the west line of 88, and there is a call for the road in the west line of that survey. We think, therefore, the calls for this road may be relied upon just as if they had been written into the field notes of 86 and 87.

Upon the precise question here involved, towit, the importance of passing or incidental calls in absence of other more

certain calls, we have found no Texas case direct in point. However, almost the identical question was discussed by the Supreme Court of California in the case of Weaver v. Howatt, 171 Calif. 302, 152 Pac. 925, and the language there used is directly in point here. It is as follows:

"The appellants contend that the references in the field notes and map to the natural objects, by which the site of the corner is now determined, are mere 'incidental' calls, and not "locative' calls, and hence that they should yield to distances. It is true that they are incidental calls. But incidental calls may be resorted to for the purpose of ascertaining a located corner where the locative calls have all disappeared, or cannot be identified, and there are no means, other than the incidental calls, of ascertaining the place where the locative monument for the corner was placed by the surveyor. They may or may not be allowed to prevail over the courses and distances according to the circumstances of the particular case; but in a case like this, where the locative monument is gone, and the place incapable of identification, where the distances noted in the survey as locative of the corner are manifestly erroneous, such distances should give way to the natural objects noted and found upon the ground at approximately the distances given in the notes, even if the calls for such natural objects are incidental and not 'locative.'"

**3** We are of the opinion that the trial court was well justified in taking the calls for this road as the most certain and reliable method of locating the north lines of the surveys in question. There was no uncertainty as to where these lateral lines crossed the road. Taking these points and running south the distance called for would fix with certainty where the bank of the Rio Grande river was at the time the surveys were made. In the case of Moore v. Stewart, 7 S. W. 771, the Supreme Court clearly declared that a survey might be established, if necessary, by its lateral lines. The court did not indicate just how this might be done, but manifestly had in mind a situation where by calls for courses and distances from a certain fixed point on a lateral line, the original lines might be located. By locating in this manner the Rio Grande river as it was in 1857, and with the lateral lines of the survey clearly ascertained, the obvious method of fixing the north boundary lines was by course and distance. This was in effect what the trial court did. The north lines thus located

bring the surveys in harmony with the calls for course and distance, and satisfies the calls for quantity.

In thus holding we do not wish to be understood as minimizing in the least degree the importance to be given at times to long recognition and acquiescence in a location evidenced by fencing. However, we think the trial court had a right to assume from the testimony that recognition of the fences as evidencing the true lines was by no means unequivocal. At the time John P. Kelsey built the fence where plaintiff claims the north line of 86 and 87 to be, he also owned survey 565, now claimed by defendant Garza. The building of this fence could have been to some extent referable to that fact. Sale of Survey 934 as public school land was made in 1920. Sale of Survey No. 164 as public school land was made in 1909, and same had not been patented at the time of trial. The fences in question had inclosed these surveys, or a part of same, long before the awards were made. As such possession, as against the State, could have had no importance, the purchasers, we think, had a right to infer that a continuance of the fences would not necessarily constitute an unequivocal recognition and acquiescence in same as representing the true boundary lines of the plaintiff's land. At any rate, we think the trial court was amply justified in giving to the calls to the Brownsville road, supplemented by the other circumstances mentioned, including calls for distances, as well as calls for quantity, controlling effect over the circumstance of the old fences, even if there were partial recognition and acquiescence; especially when we consider the fact that a location by the fences greatly enlarged the calls for distance, as well as acreage in porciones 86 and 87.

4. Plaintiff pleaded title to the lands in controversy under Article 5519 of the Revised Statutes of 1925, sometimes referred to as the 25-year statute. That article formerly read as follows:

"No person who has a right of action for the recovery of lands, tenements, or hereditaments shall be permitted to maintain an action therefor against one who holds such lands, tenements and hereditaments by peaceable, adverse claim of right in good faith under a regular chain of title, descending from the State of Texas with all the muniments of such title, duly recorded in the county where the land is situated for a period of twenty-five years prior to the accrual of such cause of action, and one so holding and claiming such lands, tene-

ments and hereditaments under such title shall be held to have a good marketable title thereto."

This article was amended in 1927, but even as amended it still requires peaceable and adverse possession "under a deed or deeds, or any instrument or instruments, purporting to convey the same, which deed or deeds or instrument or instruments purporting to convey the same have been recorded in the deed records of the county in which the real estate or a part thereof is situated."

The trial court found against plaintiff, and it is not made to plainly appear that the presumed finding, as regards the matter of peaceable and adverse possession, was without evidence to support it. In addition, the record does not show that plaintiff held under any deed or instrument specifically describing the land in controversy. Her deeds merely described the lands as porciones 86 and 87, and whether they included the land in controversy, or not, depended after all upon the question of boundary. Having concluded that the lands in controversy were not in porciones 86 or 87, the plea of limitation necessarily fails.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Opinion adopted by the Supreme Court April 16, 1941.

Rehearing overruled July 16, 1941.