## May, et al. v. Chesapeake & Ohio Railway Company, et al.

(Decided April 29, 1919.)

### Appeal from Pike Circuit Court.

1. Deeds—Life Estates.—A deed which in its granting clause contains the words, "The said Wm. Ratliff for and in consideration of natural affection for the said Ann Eliza (being his daughter) hath this day bargained and sold unto the said Ann Eliza a certain tract or parcel of land, lying and being in the county of Pike and State of Kentucky"; and the habendum clause contains these words: "To have and to hold forever free from me, my heirs and assigns unto the said Ann Eliza May, her heirs and assigns, that is to say unto Ann Eliza her lifetime, then to her children," conveys a life estate only to the mother with remainder in fee to her children.

2. Deeds—Life Estates.—One who purchases land from a life tenant takes only a life estate even though the deed of the life tenant purports to convey the fee simple title.

3. Adverse Possession—Holding of Grantee of Life Tenant—Remainders.—The holding of a grantee of a life tenant can not become adverse to the remainderman during the continuancy of the particular estate, even though he enter under a general warranty deed for the whole estate.

4. Adverse Possession—Title.—Where plaintiff and defendant claim title under a common source, the defendant can not rely upon an outstanding superior title with which he has no privity to defeat the claim of the plaintiff; nor can he deny the title under which he holds, but is bound by all material recitations in each link of the chain of conveyances under which he claims.

5.   Life Estates—Remaindermen—Possession.—The possession of a life tenant is the possession of the remainderman, and the possesion of one cotenant inures to the benefit of all cotenants.

6.   Life Estates—Limitation of Actions.—A life tenant in possession who acquired an interest of a joint-tenant, can not set the statute of limitations running so as to bar the remainderman until the termination of the life tenancy, no matter how long; but on the happening of this event, he may by manifesting a tenancy in severalty, under color of recorded title, set the statute in motion, which will ripen into title at the end of the statutory period.

7.   Joint Tenancy—Adverse   Possession—Disseizin.—Ordinarily the exclusive possession of one joint tenant will not work a disseizin of his fellows until actual notice of his purpose to hold in severalty is brought home to them; but if his holding is under a general warranty deed of record for the whole estate, and is also open, adverse and exclusive, it will amount to a disseizin which time will ripen into title.

8.   Courts—Stare Decisis—Estoppel.—The rule of stare decisis does not operate to estop a court where property rights were acquired before decision, nor in a case in which the recognized rule has been varied and in which the specific property is not affected.

   STRATTON & STEPHENSON and JOHN W. WOODS for appellants.

   A. L. RATLIFF, J. M. YORK, J. J. MOORE and WORTHINGTON, COCHRAN & BROWNING for Chesapeake & Ohio Railway Company.

   CHILDERS & CHILDERS for Joel and Harriett Ratliff.

   OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

   This action in ejectment was instituted by D. A. May and several other persons, heirs of Ann Eliza May, in the Pike circuit court in August, 1913, to recover of the C. & O. Railway Company, Greenough Coal & Coke Company, Big Sandy Railway Company, Joel Ratliff and Harriett Ratliff, eleven-twelfths of a tract of 50 acres of land, lying on Marrowbone creek, in Pike county. The C. & O. Railway Company built its track across the land for a distance of one-half mile or more, and the Greenough Coal & Coke Company had constructed its mining camp, consisting of a tipple, or tipples, trams, incline, switches, tracts, commissary and many houses used for residences upon a part of the land; and Joel Ratliff and wife were in possession of the balance of the tract, holding and claiming it as their own at the time of the institution of the action. The lands in controversy were

patented to David Branham June 21, 1827, and Branham took actual possession in the same year. On March 7, 1836, Branham sold and conveyed the land to Isaac Moore by deed of that date; Moore sold it to William Ratliff, Sr., and conveyed it by deed of date March 4, 1839. Ratliff on March 13, 1846, by deed conveyed a life estate in the lands to his daughter, Mrs. Ann Eliza May, with remainder to her children, and this is the beginning of the controversy. Ann Eliza was the wife of James May, and they immediately took actual possession of the land and lived on it until 1853. In the meantime Polly May, a daughter of Ann Eliza and James May, died intestate, and James and Ann Eliza May, as the heirs of their daughter, inherited her share of the land in fee. On February 1, 1853, James and Ann Eliza May undertook to convey the fee simple title to the entire tract by deed to Reuben Rowe. In May, 1856, Rowe conveyed it, by deed of special warranty, to Silas Ratliff. Shortly thereafter Silas Ratliff died leaving a will, which was probated in 1858, devising this tract of land to his daughter, Rebecca Ratliff, who afterwards married Lovett Childers, and Mrs. Childers and her husband, on June 30, 1882, deeded the land to William Ratliff and appellee, Joel Ratliff, with covenants of general warranty. By deed of date April 16, 1887, William Ratliff and wife conveyed their one-half undivided interest to appellee, Joel Ratliff, by deed of general warranty, thus apparently investing him with title to the whole tract. Joel Ratliff took and held said land from 1887 until a short time before the institution of this action, when he sold and conveyed by deed of date August 29, 1905, a part of it to his co-appellee, Greenough Coal Company, and about the same time sold a right of way to the C. & O. Railway Company. The balance he holds and claims as his own.

This litigation, commenced by the children and heirs of Ann Eliza May, is based upon a claim of ownership of the tract of land to which reference is made under the deed above mentioned, from William Ratliff, Sr., in 1846, to his daughter, Ann Eliza May, in which he attempted to convey to her a life estate with remainder to her children. Said deed is as follows:

"This indenture made and entered into, this 13th day of March, A. D. 1846, by and between Wm. Ratliff, Sr. of the one part, of the county of Pike and state of Ken-

tucky, and Ann Eliza May of the other part of the same county and state. The said Wm. Ratliff, for and in consideration of natural affection for the said Ann Eliza (being his daughter) hath this day bargained and sold unto the said Ann Eliza a certain tract or parcel of land lying and being in the county of Pike and state of Kentucky, on the waters of the Long Fork of Marrowbone creek, containing 50 acres by survey, bounded as followeth; to-wit: Beginning on a beech on the south side of the creek, thence running up the creek S. 44 E. 60 poles to a beech; S. 69 E. 40 poles to a hickory; S. 74 E. 40 poles to a beech; S. 20 W. 12 poles to a beech; N. 78 W. 90 poles to lynn; S. 30 W. 28 poles to a small lynn on the bank of the creek; S. 8 W. 39 poles to a beech; S. 13 E. 44 poles to a sugar tree; S. 10 W. 82 poles to a large beech; S. 59 W. 20 poles to a beech and maple, same course 100 poles to a stake; N. 40 W. 80 poles; thence running back by parallel lines, N. 59 E. 99 poles; N. 10 E. 28 poles; N. 13 W. 44 poles; N. 8 E. 39 poles; N. 30 E. 28 poles; N. 20. W. 90 poles; S. 77 E. 86 poles to the beginning, with its appurtenances, to have and to hold forever free from me, my heirs and assigns unto the said Ann Eliza May, her heirs and assigns. That is to say unto Ann Eliza her lifetime, then to her children, and will forever warrant and defend from all claim or claims claiming in, thru, or by me. In testimony whereof I have hereunto set my hand and seal, this day and date above written.

"WM. RATLIFF (Seal).

"Attest:
  "G. W. BROWN,
  "COLBERT CECIL,
"NATH ROBBETT."

Appellants (plaintiffs below) assert that the language of the habendum clause of said deed vested Ann Eliza May with a life estate only, with remainder to her children, and that her deed made in 1853, which purported to convey the fee simple title to the entire tract, did in fact convey only her life estate therein, with a one-twelfth interest in fee, which she and James May inherited from one of their twelve children, who died before they executed the deed to Reuben Rowe. Ann Eliza May died in January, 1897, and this action was commenced on August 16, 1913, more than sixteen years after the death of the life tenant.

Each of the appellees (defendants below) filed a separate answer in which the material allegations of the petition and its several amendments were controverted. In another paragraph the answers interposed the fifteen year statute of limitation; in another paragraph the thirty year statute of limitations was pleaded, and one defendant in yet another paragraph alleged facts which entitled it to relief under the seven year statute of limitation. Each defendant, by way of counterclaim against the plaintiffs, averred that since it has been in the possession of said lands, it had erected permanent, valuable and lasting improvements thereon; that at the time it did so, it in good faith believed it was the owner of the land and built said improvements in good faith, and each defendant asks that in case the plaintiffs, appellants here, recover said land, defendants be adjudged a lien thereon for the value of said improvements. Issue was joined, and after the taking of much evidence on both sides in depositions, the case having been transferred by agreement to equity, was submitted for judgment, whereupon the court dismissed the petition of plaintiffs, and they prosecute this appeal.

Appellants asserting the following propositions, urge a reversal of the judgment:

(1) The deed from Wm. Ratliff, Sr., to his daughter, Ann Eliza May, and under which appellants claim, vested Ann Eliza May with a life estate only, with remainder to her children; (2) appellants and appellees claim title through a common source; (3) appellants and appellees are tenants in common, and in the absence of notice of hostile holding, the possession of one tenant is the possession of all, and as there is no proof of the alleged hostile holding of appellees until within fifteen years before the filing of this suit, appellees' possession was the possession of all of the tenants in common; (4) appellees are estopped by the recitals in the deeds under which they claim title to dispute the title of appellants; (5) appellees can not rely on an outstanding superior title, such as the Virginia grant of 1787, with which they have no privity, to defeat the claim of appellants; (6) nor can appellees rely upon the Silas Ratliff patent of 1860 to defeat the Branham patent of 1827, since Silas Ratliff acquired title through Ann Eliza May to a life estate and a one-twelfth undivided interest in fee in the Branham patent, and as life tenant and tenant in common,

Joel Ratliff and his grantees are not permitted to deny the title of the remainderman, or to acquire an outstanding hostile title, while holding under the deed granting the life estate, against a tenant in common or a remainderman; (7) the statute of limitation did not begin to run against such of the appellants as were married, or infants at the death of Ann Eliza May in 1897; nor until said persons were relieved of disability, and the infants had three years after becoming 21 years of age in which to commence their proceedings; (8) the thirty year statute of limitation has no application under the facts in this case; (9) the seven year statute of limitation can not, avail appellees.

Appellees insist that the judgment should be affirmed (a) because the action was one in ejectment, and the burden was upon the plaintiffs to present such a title to the land as would definitely fix their right to recover irrespective of the weakness of the title of defendants; (b) the patent to David Branham, issued in 1827, was void because granted upon land covered by a patent issued to Duvall and Marshall, of date 1787; (c) because plaintiffs failed to connect themselves by an authenticated chain of title with the Branham patent; (d) the deed to Ann Eliza May vested her with the fee simple title and not a life estate only; (e) Joel Ratliff and those under whom he claims have held the adverse possession of the property under title of record deducible from the Commonwealth for more than 30 years; (f) more than 15 years had elapsed from the death of the life tenant before the bringing of this suit, and as some of the heirs of Ann Eliza May were *sui juris* at the time of her death, in 1897, the 15 year statute began to run against all, and their right was barred and tolled before the commencement of the action; (g) the claim of appellants is stale.

Appellees assert that they do not claim title to the lands in controversy under the grant to David Branham in 1827, but that their claim is deduced from a patent issued by the Commonwealth of Kentucky to Silas Ratliff April 6, 1860. The survey on which this patent was issued is dated April 24, 1857. It is, therefore, the contention of appellees that no common source of title exists between appellants and appellees, while appellants insist that there is a common source of title from which both claim, and upon the determination of this question depends the solution of several other questions. For, if

both parties claim title under a common source, it was incumbent upon plaintiffs below to win upon the strength of their own title regardless of the weakness of the title of the defendants, and appellees will not be permitted to deny the title of their predecessors in the chain, or interpose the defense that the lands in controversy were covered by a previous patent issued to Duvall and Marshall, in 1787. As all the appellees claim under the title of Joel Ratliff and the corporations have but recently acquired their interest, they all stand upon the same footing. The description of the lands granted to Branham by the Commonwealth is followed substantially in several deeds in the chain of title of appellees, and materially assist in identifying the lands. Let it be remembered that appellee, Joel Ratliff, acquired title to a one-half undivided interest from his father, Wm. Ratliff, by deed in 1887; this instrument contains the following as a part of the description of the tract of land conveyed:

"A certain tract or parcel of land lying and being in Pike county, Kentucky, on Marrowbone creek, it being a tributary of Russell's Fork of Big Sandy river also, said land adjoins John A. Bartlett's land, *known as the James May survey, it being willed unto Rebecca Childers by her father,* bounded as follows: Beginning on a beech running up the south of Marrowbone creek."

While there appears to have been two Silas Ratliffs, two Wm. Ratliffs and two Joel Ratliffs, there was but one James May, and the James May mentioned in the foregoing description is the same James May who was the husband of Ann Eliza May, and who joined her in the deed which she made for the tract of land in controversy to Reuben Rowe, in 1853, and is the same James May mentioned in several mesne conveyances in the chain of title of appellees. In other words, it appears that the tract of land in controversy was known for many years as the James May lands. In 1882 Rebecca Ratliff Childers and her husband, in conveying said tract to William and Joel Ratliff jointly, used the following as a part of the description:

"A certain tract or parcel of land lying in the county of Pike, state of Kentucky, on Marrowbone creek, a branch of the Russell's Fork of Sandy river, *and known as the James May farm, it being that willed to Rebecca Childers by Silas Ratliff, her father.*

Silas Ratliff, in his will made August 6, 1858, and pro-bated in the same year, in devising the tract of land in controversy to his daughter Rebecca, who afterwards married Childers, employs the following language: "Item. I will and bequeath to my daughter Re-becca Ratliff the tract of land lying at the forks of Marrowbone creek and *known as the James May farm with its appurtenances.*" The patent to Silas Ratliff, under which appellees now assert claim, is dated April 8, 1860, more that a year after the death of Silas Ratliff. It can not be controverted that Joel Ratliff entered under the James May title and not under the Silas Ratliff patent of 1860, for his deed so recites in effect. He says he did not know of appellants' claim until only a short time before the commencement of this litigation, and we apprehend that was the be-ginning of his claim under the Silas Ratliff patent. That patent was registered October 19, 1859, which was after the death of Silas Ratliff. But the survey upon which it was based is dated April 24, 1857. This patent granted 100 acres, while the James May tract mentioned in the deeds in the chain of title of appellees, is described as "containing about 25 acres." The patent issued to Branham, however, was for 50 acres. The Silas Ratliff patent was not therefore in existence at the time he made the will devising the James May lands to his daughter. Appellants assert that the Wm. Ratliff who was the father of Ann Eliza May is the same Wm. Ratliff who is the father of Joel and to whom the land in controversy was deeded by Rebecca Childers in 1882. We doubt this, but we do not regard it as important, because if it were a different Wm. Ratliff that would have no effect what-ever upon the claim of appellants. Wm. Ratliff in 1846, having conveyed his entire interest in the tract of land to his daughter, Ann Eliza, for life, then to her children in remainder, divested himself of every species of claim to the property. That deed was placed of record in the proper office in 1846. If later Wm. Ratliff purchased the tract from Mrs. Childers and her husband, he was in the same position as any other purchaser with knowledge. If it were a different Wm. Ratliff he received the same estate as the other grantees who purchased with the deed in their chain of title specifically granting a life estate only to their remote grantors, the life tenant still surviv-ing. However many Silas Ratliffs there may have been,

appellees' chain of title is through Silas Ratliff, father of Rebecca Ratliff Childers, and he in his will carefully devised to his daughter Rebecca the tract of land lying at the forks of Marrowbone creek and *known as the James May farm.* So, one must conclude that the testator, Silas Ratliff, was the same Silas Ratliff to whom Reuben Rowe granted the land in 1856, and was the owner of the James May land and devised it—not the new survey—to his daughter Rebecca. Identity of name is *prima facie* evidence of identity of person. At that time Wm. Ratliff did not have the patent nor otherwise own, except under the James May deed, the 100 acre tract under which appellees would claim, so far as this record shows. Therefore, Rebecca Ratliff Childers, under the will, took only the James May land, which land her father owned and willed to her, and not the 100 acre survey afterwards patented in the name of her father, who was then dead. As Silas Ratliff took title to a life estate in the May lands in 1856, we will presume, in the absence of a contrary showing, that he also took possession under said conveyance, and claimed under it. His deed, while purporting to convey the fee, was quitclaim only. Mrs. Rebecca Ratliff Childers and appellee, Joel Ratliff, appear to have understood and recognized this in 1882, for by the deed of Mrs. Childers to Joel Ratliff and his father, Wm. Ratliff, the land is described as *"the James May farm, it being that willed to Rebecca Childers by Silas Ratliff, her father, containing about 25 acres."* Hence one can not doubt that Joel Ratliff, at the time he purchased an interest in the lands in 1882, as well as when he purchased his father's undivided interest in the same tract in 1887, knew this land to be the "James May Farm," and so knowing was bound to take notice of all recitals in deeds in his chain of title back to the Commonwealth, limiting his estate. 10 R. C. L. 686; Talbott's Ex. v. Bell, 5 B. M. 323; Debell v. Foxworth's Heirs, 9 B. M. 228; Vanmetre v. Griffith, 4 Dana, 65: "As a general rule, one claiming title to lands is chargeable with notice of every matter affecting the estate which appears on the face of any deed forming an essential link in the chain of instruments through which he derives his title, and also with notice of whatever matters he would have learned by any inquiry which the recitals in those instruments made it his duty to pursue; and he is not entitled to rely upon his vendor's repre-

sentations contradicting such recitals." 39 Cyc. 1713; Deskins v. Big Sandy Co., 121 Ky. 601; 89 S. W. 695; Bailey v. Southern R. Co., 112 Ky. 424; Honore v. Bakewe, 6 B. Monroe 67; Hackwith v. Damron, 1 T. B. Mon. 235; Shuttleworth v. Kentucky Coal, etc., 60 S. W. 1013; Dotson v. Merritt, 141 Ky. 155. Where one claims under a deed he is estopped to deny the nature of estate and all limitations and reservations recited in the deed. 16 Cyc. 687; Johnston v. Gwathmey, &c., 4 Litt. 318, 23 R. C. L. 216.

The law charges a prospective purchaser with knowledge of the description of land, its location, adjoining owners, character of estate, and every other material thing set out in the recorded deeds in the chain of title. Leob v. Conley, 160 Ky. 98. It is a well established rule of evidence that whatever is sufficient to put a purchaser upon inquiry as to the facts, is equivalent to full notice of all the facts that such inquiry would have discovered to him. Allen v. Ligon, 175 Ky. 767; Willis v. Vallette, 4 Met. 186; Lain v. Morton, 23 Ky. L. R. 438; Summers v. Taylor, 80 Ky. 429. It follows, therefore, that Joel Ratliff as well as his predecesors in title knew, either actually or constructively, that the deed of William Ratliff, Sr., to his daughter, Ann Eliza May, made in 1846, which was of record in the proper office, conveyed to her only a life estate with remainder to her children, and claiming and holding under such deed he was estopped to deny the title of the remainderman. While appellees insist that their claim is based upon the patent issued to Silas Ratliff in 1860, they have no deed or other title paper which connects them with that patent, but on the contrary hold a deed spcifically calling for "the James May lands." Undoubtedly Wm. Ratliff, Sr., is the common source of title of appellants and appellees. It follows, therefore, that appellees are estopped to plead or rely upon the prior patent issued to Marshall and Duvall in 1787, there being no privity between appellees and the Marshall and Duvall patent. In Majestic Colleries Co. v. Allen, 176 Ky. 250, this court held "the title of the common source need not be proven, and each party is estopped to deny the validity of the title under which he claims or holds, and can not, therefore, defeat his adversary by proof of a superior outstanding title with which he shows no privity or connection." To the same effect are the following cases: Woolfork v. Ashby, 2 Met.

288; McClain v. Gregg, 2 A. K. Mar. 454; Davis, et al. v. Davis, et al., 157 Ky. 530, 163 S. W. 468; Leun v. Wilson, 85 Ky. 503; Heard v. Cherry, 92 S. W. 551; Barnett v. Minnix, 17 S. W. 334.

Nor will appellees be permitted to deny the validity of the patent issued to David Branham in 1827, which is the original source of their title.

As the statute of limitations could not, therefore, have been set in motion until the death of the life tenant in 1897, the thirty year statute could have no application.

Although the seven year statute of limitations is relied upon as a defense in the answer of the C. & O. R. R. Co., it does not insist upon it, and we are unable to find a place for such plea in this case.

No principle is better settled than that a life tenant will not be heard to deny the title of remaindermen: "the possession of a tenant for life, as such, can not be adverse to the remainderman or reversioner, because the right of action of a remainderman or reversioner does not accrue until the death of the life tenant. It has been so held as to life tenants in the right of dower and by the curtesy. . . . Prior to the death of the tenant for life, the possession of his grantee can not be adverse to the remainderman or reversioner, and the statute begins to run against the remainderman only on the death of the tenant of the particular estate." 1 R. C. L., secs. 63 and 64; Carpenter v. Moorelock, etc., 151 Ky. 506; Jeffres v. Butler, 108 Ky. 531; Bransom v. Thompson, 81 Ky. 387; Ratterman v. Apperson, 141 Ky. 821; Ray v. Thomas, 140 Ky. 570; Penn v. Rhoades, 124 Ky. 798; Justice v. May, 176 Ky. 81; Smith v. Young, 178 Ky. 376.

The life tenant's holding is not adverse to the remainderman, but, upon the contrary, is amicable to him; the possession of the life tenant being the possession of the remainderman. . . . that the life tenant does not hold adversely to the remainderman is so elementary as hardly to need citation of authority." Davidson v. Kelly, 23 R. 1011; Berry v. Hall, 11 R. 30; May v. Scott, 14 S. W. 191; Tucker v. Price, 17 R. 11; McIlvan v. Porter, 7 S. W. 309, 9 R. 899; De Coursy's Admr. v. Dicken, 1 Ky. Law Rep. 260; Simmins v. McKay, 5 Bush 31; Gudgell v. Tydings, 10 R. 737; Phillips v. Johnson. 14 B. Mon. 472; Davis and others v. Willson, 115 Ky. 639.

Possession acquired and held under a life tenant can not be adverse during his lifetime, to those who are entitled to the estate after the termination of the life estate. Simmons, etc. v. McKay, etc., *supra;* Justice v. May, 176 Ky. 80, *supra.*

So also has it been written:

"No principle is better settled than that a remainder-man in real estate can not sue for the land, the thing itself, until the termination of the life estate which precedes him. The possession of a life tenant is his possession." Walker v. Milliken, 150 Ky. 17; Bransom, etc. v. Thompson, 81 Ky. 387.

Limitation does not begin to run against a remainder-man until the right of entry exists in him, which is at the termination of the particular estate. Francis v. Wood, 81 Ky. 16.

Even where the life tenant attempts to convey the fee and describes the entire boundary, and this deed is placed of record, limitation does not begin to run against the remainderman until the death of the life tenant. Walker v. Milliken, *supra;* Bransom v. Thompson, *supra;* Jeffries, et al. v. Butler, 108 Ky. 531; McIlvan v. Porter, et al., *supra;* Hamilton v. Hamilton, 29 S. W., 876; Ratterman v. Apperson, 141 Ky. 821; Ray v. Thomas, *supra;* Penn v. Rhoades, *supra.*

Since the remote vendor of appellees entered under the life tenant the holding was amicable and did not and could not become adverse to the remainderman so long as they continued to hold and claim under the James May and Ann Eliza May deed. This brings us down to the death of the life tenant, Ann Eliza May, in January, 1897.

The only maintainable defense of appellees to appellants' right to recover, to which our attention has been called, is the 15 year statute of limitations. The life tenant died in 1897, and the action was not commenced until in August, 1913, which was more than fifteen years after the cause of action accrued, as appellees claim, to the remainderman. Appellants, however, insist that the statute did not begin to run against them on the death of the life tenant because several of the grandchildren were under the age of twenty-one years, and other heirs were married women, and, therefore, under disability. It is admitted by appellants that certain of the heirs of Ann Eliza were *sui juris* at her death.

This being true, the statute of limitation began to run against all of appellants immediately upon the death of the life tenant, under a well established rule that where part of the heirs are of full age and not under disability at the time the right of entry descended to them, the disability of the others does not prevent the statute from running against all. Moore v. Calvert, 6 Bush, 356; Patterson v. Hansel, 4 Bush 660; Sharp v. Stephens, 52 S. W. 977; Collier v. Davis, 12 Ky. Opin. 100; Simpson v. Shannon, 3 A. K. Mar. 462; Allen v. Beal, 3 A. K. Mar. 554; Clay v. Miller, 3 Mon. 148. But if all the cotenants to whom the right of action descends be under disability at the time the right of action accrues, the statute does not start running until the disability is removed from all, even the youngest. Moore v. Calvert, *supra*.

Appellees assert that their right to the property by adverse possession is established by the admitted fact that they have not only held actual possession but have paid all taxes due the county and state and that appellants have paid no taxes or other expenses of upkeep of the property. This contention is fallacious. The life tenant is bound to preserve the property and to keep it up so long as the particular estate continues. 37 Cyc. 790.

"As between a remainderman and a life tenant in possession, the latter, since he enjoys the rents and profits of the land, must pay the taxes and the remainderman, in the absence of some agreement or controlling equity, is under no obligation to do so." 17 R. C. L. 636; Prescott v. Grimes, 143 Ky. 191; C. & O. R. R. v. Rosskamp, 179 Ky 175; Creutz v. Heil, 89 Ky. 432; Anderson v. Daugherty, 169 Ky. 169.

"One in possession of property either as a life tenant or tenant in fee is personally liable for taxes during his possession and the property itself is also bound therefor." Morrison v. Fletcher, 119 Ky. 488; Smith v. Young, 178 Ky. 468.

Appellants next insist appellees are tenants in common with them, and as such held the land in controversy for the joint use and benefit of all the tenants in common, including appellants, and that such holding was not adverse to appellants because no notice, either actual or constructive, had been given to appellants of the intention of appellees and their predecesors to hold and claim the land adversely to appellants, nor had appellees or their predecessors done anything on the land which was

so utterly inconsistent with an amicable holding as to put appellants upon notice that appellees were claiming and holding the entire estate to the exclusion of appellants as much as 15 years next before the commencement of the action. Ann Eliza May and her husband and children removed to a distant part of the state very soon after the deed to Reuben Rowe, in 1853, was executed, and were never again in the vicinity of the land, except some of the children, shortly before the commencement of this action, visited in Pike county. It is a rule of long standing that one tenant in common holding under a common title is estopped to deny the title of his cotenant, and the statute of limitation does not begin to run against such cotenant until actual notice is brought to him by the occupying tenant, either by express declaration or by such acts or conduct as would preclude any other idea than absolute ownership on the part of the occupying tenant, and that the occupant intended to hold and claim the land as separate estate adversely to all the world, including his cotenant. When this comes to pass the statute of limitation always begins to run, and the duty is upon the outstanding cotenant to assert his right within the statutory period, or forever after hold his peace. But no presumption of adverse possession arises from one cotenant merely holding and using land in the ordinary and usual way. On the contrary, such holding and use is presumed to be amicable and for the joint use of all cotenants, and this is true even where the life tenant in possession is also a cotenant. "It is a universal rule that the possession of one cotenant is the possession of all, and each has the present right to enter upon the whole land and upon every part of it, and to occupy and enjoy the whole." 7 R. C. L. 820.

"Each cotenant has the right to the possession of all the property held in cotenancy, equal to the right of each of his companions in interest, and superior to that of all other persons. He has the same right to the use and enjoyment of the common property that he has to his sole property, except in so far as it is limited by the equal right of his cotenants. Accordingly the rule is that each cotenant of realty may, at all times, reasonably enjoy every part of the common property; that is, he is entitled to such enjoyment as will not interfere with the like rights of his cotenants." 7 R. C. L. 821.

Joel Ratliff, while holding an absolute deed for the whole of the land, was in fact the owner of the life estate only plus an undivided interest of one or two co-tenants (twelfths), in remainder, but not the whole estate in remainder.

A possession in its origin amicable, requires open acts of renunciation sufficient to raise a presumption of notice of an adverse holding in order to constitute a disseizin such as will initiate an adverse possession and set the statute in motion. Frazier, et al. v. Morris, 161 Ky. 72, 7 R. C. L. 844.

If the possession in its origin is amicable it will not become adverse so as to set the statute of limitations in motion, unless the property is in fact held adversely and in such manner as to apprise a person of ordinary prudence that the holding is adverse. Padgett v. Decker, 145 Ky. 227; Cryer v. McGuire, 148 Ky. 100; McGurley v. Venters, 104 S. W. 365; Middleton v. Fields, 142 Ky. 352; Collins v. Blair, 178 Ky. 120; C. & O. R. R. v. Rosskamp, 179 Ky. 175; Big Blain Oil & Gas Co. v. Yates, 182 Ky. 50; Snyder v. Vinson, et al., 167 Ky. 332.

The text in ruling case law is stated as follows:

"Every cotenant has the right to enter into and oc-cupy the common property and every part thereof, pro-vided in so doing he does not exclude his fellow-tenants or otherwise deny them some right to which they are entitled as tenants, and they, on their part, may safely assume, until something occurs of which they must take notice which indicates the contrary, that the possession taken and held by him is held as a cotenant and is in law the possession of all the cotenants and not adverse to any of them. . . . It is not questioned, however, that one cotenant may oust the others and set up an exclusive right of ownership in himself, and that an open, notorious and hostile possession of this character for the statutory period will ripen into title as against the cotenants who were ousted." 1 R. C. L., sec. 61, page 741.

In order that one of several cotenants may acquire title by adverse possession as against the others, his pos-session must be of such an actual, open, notorious, ex-clusive and hostile character as amounts to an ouster of the other tenants. . . . Acts of ownership by one co-tenant do not within themselves actually amount to the disseizin of the other cotenants; indeed, they may be so explained as to show a consistency with the joint title.

Generally, a cotenant's sole possession of the land becomes adverse to his fellow-tenants by his repudiation or disavowal of the relation of cotenancy between them; and any act or conduct signifying his intention to hold, occupy and enjoy the premises exclusively, and of which the tenant out of possession has knowledge, or of which he has sufficient information to put him upon inquiry, amounts to an ouster of such tenant. 1 R. C. L., sec. 742.

Another eminent text writer says:

"Where possession is originally taken and held under the true owner, a clear, positive and continued disclaimer and disavowal of title, and an assertion of an adverse right brought home to the true owner are indispensable before any foundation can be laid for the operation of the statute of limitation." 2 Corpus Juris, sec. 230.

Adverse possession, in order to bar recovery, should be brought to the notice of the joint tenant or landlord. Tippenhauer v. Tippenhauer, 158 Ky. 645. See also Padgett v. Decker, 145 Ky. 227; Upchurch v. Sutton, 142 Ky. 420; Cryer v. McGuire, *supra;* Wolford v. Smith, 146 Ky. 341; Morton v. Lawton, 1 B. M. 45; Chambers v. Pleak, 6 Dana 426; Sullivan v. Sullivan, 179 Ky. 686.

In 1 Cyc. 1146 the rule is stated as follows:

"It is well settled that where one joint owner is in possession of the whole, the presumption is that he is keeping possession not only for himself but for his cotenant according to their respective rights. But an ouster or disseizin, while not to be presumed from the mere fact of sole possession, may be shown by such possession accompanied with a notorious claim of an exclusive right." Gossom v. Donaldson, 18 B. Mon., 230.

The same text in 38 Cyc., page 25, states the rule as follows: "But before a tenant in common can rely on an ouster of his cotenants, he must claim the entire title to the land in himself, and must hold the exclusive and adverse possession against every other person, thus repudiating the relation of cotenancy, for an ouster of one tenant in common by his cotenant is not to be presumed in the absence of some open, notorious act of ouster and adverse possession, and possession by a tenant in common is not adverse as to his cotenant until they are so informed, either by express notice or by acts of such an open, notorious and hostile character as to be notice in themselves, or sufficient to put the cotenant upon inquiry

which, if diligently pursued, will lead to *actual knowledge*, the acts and declarations of a tenant in common, intended to show his adverse holding so as to entitle him to the benefit of the statute of limitations, being construed more strongly against him than such acts and declarations would have been construed had there been no privity. . . . The entry and possession of one cotenant being ordinarily deemed the entry and possession of all, mere possession by one cotenant can not operate as an ouster or disseizin as against his cotenants, even when attended with the exclusive receipt of rents and profits, and mere lapse of time or mere delay on the part of a tenant in common not in possession, in failing to demand admission to joint possession . . . is not sufficient to evidence an adverse holding by the one in possession.''

This court, in the case of Kidd v. Bell, 122 S. W. 235, held that to make the possession of a tenant in common adverse to the cotenant, the possession must be open, notorious and hostile to the other cotenant and *known* by him to be so.

The rule governing adverse possession between cotenants in common is well stated in the opinion in the case of Rush v. Cornett, 169 Ky. 719, where it is said ''the rule is altogether different as to what constitutes adverse possession as against a cotenant. In that instance the occupant must not only be in the actual possession of the land, claiming it to a well defined, marked boundary, and that such possession is open and notorious, and with a claim in himself to all of it, but these facts must be *known to his cotenant* in order to eventually ripen the possession of the claimant into title in himself. Hamilton v. Steele, 117 S. W. 378; Vermillion v. Nickell, 114 S. W. 270; Winchester v. Watson, 169 Ky. 213; Johnson v. Myer, 168 Ky. 432; Collins v. Blair, 198 S. W. 541; Kidd v. Bell, 122 S. W. 232; Barrett v. Coburn, 3 Met. 510; Chambers v. Pleak, 6 Dana 426. The deed of one having only a life estate, though attempting and purporting to convey the fee, is effective to convey a life estate only, and does not affect the interests of remaindermen. Justice v. May, 176 Ky. 81.

In the case at bar Joel Ratliff, who held under and by the life tenant, was in possession of the whole of the land in controversy at the death of the life tenant in 1897, and continued to reside thereon until and after the in-

stitution of this action. He lived on, cultivated and used parts of it; rented and let it in any way he desired. Appellants, heirs of Ann Eliza May, did not live in Pike county, and no one of them was in the vicinity of the land so far as this record shows from the death of the life tenant until shortly before the commencement of this action. The home of Ann Eliza May and her husband and children was in Greenup county, Kentucky. Some of appellants took up their residence in other counties in Kentucky, and others in different states, but it satisfactorily appears that no one of appellants knew or had reasonable opportunity to have known of the claim of appellee, Joel Ratliff, or any of his predecessors in title, to ownership in severalty of the land in dispute. So long as the life tenant lived, Joel Ratliff, as the grantee of the life estate, was entitled to hold, occupy and use the lands without let or hindrance from the remainderman, but upon the death of the life tenant, his holding became adverse under the facts of this case to the remainderman unless he was a cotenant with them, and as such held and possessed the land for the joint use and benefit of himself and the other cotenants. The presumption is, in the absence of a showing to the contrary, that the holding of a cotenant is amicable and not adverse to his fellows. The burden, therefore, is upon the cotenant claiming in severalty to establish the disseizin by adverse holding for the statutory period. In order to do so, the claimant must show (1) that he gave notice to his cotenants by express declaration that he was claiming the whole estate in severalty, and denying their right therein; or (2) he must have so exercised the possession and controlled and used the premises as to have apprised a reasonably prudent person that the claimant was denying the right of his cotenants to any share in the estate; or (3) he must hold the estate adversely and exclusively under a title of record for the whole in severalty, and thus bring constructive notice to the outstanding cotenants. Greenhill v. Biggs, 85 Ky. 155. As said in Padgett v. Decker, 145 Ky. 227: "A possession in its origin amicable will not become adverse so as to set the statutes running unless the property is, in fact, held adversely and in such manner as to apprise the other party or a person of ordinary prudence that the holding is adverse."

In the recent case of Rush v. Cornett, *supra,* it was distinctly held that the possession did not become adverse to cotenants and the statute of limitation did not begin to run until the fact of the adverse claim was made known to the outstanding cotenants.

It therefore appears that a decision of the question here involved depends partly upon the nature of the use which appellee, Joel Ratliff, made of the premises in question after the death of the life tenant in 1897, no less than the claim of title which the absolute and complete possession, coupled with a recorded general warranty deed for the fee estate, manifested. A review of all the authorities makes it apparent that any use of lands which is not inconsistent with the cotenancy or with the existence of the life tenancy or a leasehold is not sufficient to make the outstanding cotenants aware of the adverse claim, and will not amount to a disseizin, or start the statute of limitation to running, but the erection of permanent and lasting structures, the sale and conveyance by recorded deeds of the whole or portions of the estate in fee are such acts as are reasonably calculated to apprise fairly prudent persons of the fact that the claimant is holding adversely to his cotenant. In this case, appellee Ratliff sold and conveyed a part of the tract in controversy to the Greenough Coal & Coke Company by deed of date the 29th day of August, 1905, and which was recorded in the office of the clerk of the Pike county court in Deed Book 40, page 112, on the 1st day of Sept., 1905. He also sold and conveyed to the appellee, C. & O. R. R. Co., a right of way over and across the lands about the year 1905, which deed was duly recorded in said office. Under this deed the railroad company entered upon the premises and constructed and placed in operation its line of railroad about 1905. So the coal company entered upon the lands deeded to it in the year 1905, and erected coal tipples, railroad switches and a mining camp. These improvements were permanent and lasting and of such nature and conspicuousness as to have apprised a person of ordinary prudence of the adverse claim of Ratliff and his grantees, and to have amounted to a disseizin, and a vesting of title in the occupant at the end of the statutory period, but these acts were much less than 15 years before this action was commenced. Up to the time of the erection of said struc-

tures and the construction of the railroad, Ratliff had committed no act, or acts, which taken alone were reasonably calculated to have put appellants on notice that he was claiming adversely to them as cotenants.

Although we are inclined to the opinion that had appellants, or some one or more of them, resided in the immediate neighborhood of the property at the time of the demise of the life tenant in 1897, appellants would have been barred by limitation at the end of the 15 year period, because in such case a reasonable rule would require them to take notice of the fact that appellee Ratliff was claiming in severalty, yet we do not regard the continued holding of one whose original entry into possession was amicable of such a nature as to constitute a disseizin, in the absence of a recorded deed. But the actual, continuous, adverse possession of appellee Ratliff, as aforesaid, under an absolute deed of record for the whole estate, was such possession as was reasonably calculated to apprise a fairly prudent cotenant of an adverse claim on the part of Ratliff and, therefore, sufficient to set the statute running on the death of the life tenant in 1897, and to ripen the claim into title at the end of the fifteen year period. A very similar question was presented in the case of Larman v. Huey's Heirs, 13 B. M. 443, decided in 1852, where it was held that the deed of one joint tenant to another for the whole property, and the entry of a grantee under the deed claiming the whole land, amounted to an assertion of superior title and right to the whole of the estate and was hostile to the claim of all cotenants, the court saying:

"As the plaintiff makes out no title from the Commonwealth, nor any paper title further back than the sheriff's deed to Johnson, who conveyed to Berry and Huey, the right of recovery depends entirely upon the effect of the deed to Berry and Huey and of the subsequent transfers and possession. This last mentioned deed (from Johnson) made the grantees, Berry and Huey, joint tenants, and the entry of either *prima facie* inured to the benefit of both. But we do not understand that there was any actual possession, in fact at the date of Berry's deed to McIllyea, and whether there was or not, as that deed professes to convey the whole island, it asserts claim to the whole, and an entry under it by McIllyea or his vendee, Harrison, could not be presumed

to be an entry for the benefit of the other tenant in common, since it would be made under a deed which asserted title to the whole, and thus denied the title of the other to any part. The deed of Berry did not, it is true, destroy the title of Huey, nor pass it to the grantee; but the making and the acceptance of that deed was a denial of Huey's title and assertion of exclusive claim and title, and furnishes evidence of the intent with which the entry under it was made. It is also evident from other facts that Harrison claimed an exclusive possession necessarily adverse to the title or claim of Huey. And it may be assumed that whatever possession was taken and held under the deed to McIllyea was of a similar character."

See also Gillispie v. Osburn, 3 A. K. M. 72; 1 Cyc. 1078. The rule generally recognized by courts of this country makes a recorded deed by a cotenant to a stranger or to another cotenant, for the entire tract, notice to all other cotenants of an adverse holding by the grantee in possession. Puckett v. McDaniel, 8 Tex. Civ. App. 280, 28 S. W. 360; DeLeon v. McMurry, 5 Tex. Civ. App. 280, 23 S. W. 1038; McCann v. Welch, 106 Wis. 142.

In Freeman's work on cotenancy, sec. 224, it is said: "The character of an entry may be inferred from the conveyance under which it is made, as well as established by direct declarations of the party making it. The entry of a person under a conveyance which purports to convey a moiety may well be presumed to be simply as claimant of such moiety. But when the conveyance purports to dispose of the whole, should not the entry be presumed to be in the assertion of a right in severalty? Should not such entry be, of itself, sufficient evidence that the grantee intended thereby to assert all the rights with which his grantor has assumed the authority to invest him? In other words, is not an entry under a conveyance which purports to convey the entirety, equivalent to an express declaration on the part of the grantee that he enters 'claiming the whole to himself;' and is it not, therefore, such a disseizin as sets the statute of limitations in motion in favor of such grantee?" The author then quotes from Judge Story, in the case of Prescott v. Nevers, as follows:

"I take the principle of law to be clear that where a person enters into land under a claim of title thereto

by a recorded deed, his entry and possession are referred to such title, and that he is deemed to have a seizin of the land coextensive with the boundaries stated in his deed where there is no open, adverse possession of the land so described in any other person.''

He then supports the text by a case from New York, and continues:

''So in Pennsylvania, the broad proposition is maintained that the possession of land by a purchaser 'under a deed of an entire lot, is adverse to the rightful owner, though tenant in common with the grantor,' because 'the entry is under an adverse title and not as a cotenant.' 'The sale in such case, of the whole tract, is in effect such assertion of claim to the whole as cannot be mistaken, because it is wholly incompatible with an admission that the other tenant in common has any right whatever.' If the conveyance made by a tenant in common, in addition to purporting to dispose of the entirety, contains a covenant of general warranty against the claims of all persons, no room is left for a doubt that the grantor intended to deal with the lands as his individual estate, and that the grantee believed he was acquiring an estate in severalty. The entry of the grantee can not be presumed to be that of a cotenant, nor in subordination to the rights of the cotenancy. Acts of ownership on the part of such a grantee must necessarily be adverse to any other part owner. His possession taken under such deed, and continuing the requisite period of time, creates in him a complete title in severalty, by virtue of the statute of limitations. 'When one tenant in common conveys the whole estate in fee, with covenants of seizin and warranty, and his grantee enters, and claims and holds exclusive possession, the entry and claim must be deemed adverse to the title and possession of the cotenant and amounts to a disseizin.' ''

This text is supported by several of the earlier Kentucky cases. Gill v. Fauntleroy's Heirs, 8 B. M. 186; Parker v. The Proprietors, 3 Met. 101; Gillispie v. Osburn, 3 A. K. Mar. 77.

And Kentucky is committed to this doctrine, for this court in a long line of cases extending up to the present time reasserted the same principles. There are, however, two or three states which lay down the broad proposition that a tenant in common cannot acquire title by

adverse possession, except by actual ouster. California and North Carolina are among the states holding to this doctrine. In the latter state the courts declare the law to be well settled that if one tenant in common assumed to convey the entire land or any specific part of it, by metes and bounds, his deed is immaterial and the possession taken under it is confined to the estate which he actually owns and not to the boundary described in the deed, and does not start the statute of limitations running. It is an actual ouster and disseizin of the cotenant only which he is bound to notice.

In the case of Greenhill v. Biggs, *supra*, where the facts are very similar to those in the case under consideration, one who held the entire property under a deed in severalty of record from a cotenant, was held to acquire title by adverse possession even though the cotenant did not have actual knowledge of the adverse holding, it being said: "But actual notice has never been held by this court to be necessary in order to constitute adverse holding a bar to recovery in such case, it being deemed sufficient when one joint owner holds and claims the land continuously, and in such manner as to apprise the other joint owners of the adverse character of the possession. (Russell's Heirs v. Marks' Heirs, 3 Met. 37.)"

After stating that one joint owner is entitled to enter and occupy the joint property and that such occupancy is not to be regarded as adverse to his cotenants, the text in 7 R. C. L., p. 844, says:

"This proposition is based upon the supposition that the entry is made either *eo nomine* as a tenant in common, or that it is silently made, without any particular avowal in regard to it, or without notice to a cotenant that it was adverse. But the doctrine has been long since held, and the authorities sustained it, that one tenant in common may so enter and hold as to render the entry and possession adverse, and amount to an ouster of a cotenant. And so, where once it appears that the party occupying the premises holds not in recognition of, but in hostility to, the rights of his cotenants, his possession ceases to amount to constructive possession by them, and becomes adverse possession, and if maintained for the period provided by the statute of limitations, will vest in the possessor a sole title by adverse possession to the premises. . . . The title acquired

by one of the cotenants of real property under a deed in severalty from a cotenant who is holding adversely, does not inure to the benefit of another cotenant, and it is held that the grantees may tack their possession to that of their grantor for the purpose of establishing a title by adverse possession, as against such other cotenant.''

The same writer, on page 851, vol. 7, says:

''The taking and recording of a deed by one tenant in common from a third person will not have any effect towards constituting such an ouster of his cotenant as would lay the foundation for the commencement of an adverse possession against him, unless accompanied and followed by a hostile claim of which the cotenant had knowledge, and by the acts of possession not only inconsistent with but in exclusion of the continuing right of the cotenant in the premises. And so, putting a tax deed for the whole tract on record is no ouster of a cotenant unless he knew of the adverse claim, and this is true even though the claimant enters under such a deed and exercises certain acts of ownership. But if one enter under color of title, claiming the whole to himself, and other necessary conditions of adverse ownership, concur, his possession will be adverse to his cotenant.''

This rule has been followed and approved in Mounts v. Mounts, 155 Ky. 371; Frazier v. Morris, 161 Ky. 72.

Although a mere adverse holding of lands by one coowner which does not come to the actual knowledge of the outstanding tenant, or is not of such notorious nature as to put a reasonably prudent person upon inquiry is not sufficient ordinarily to set the statute of limitation running against a cotenant, yet such holding coupled with an absolute deed to the claimant for the whole property in severalty, recorded in the proper office, will set the statutes in motion. Applying this rule to the facts in this case, we are forced to the conclusion that the statute of limitations began to run in favor of Ratliff and inured to the other appellees on the death of the life tenant in 1897, and the rights of appellants were barred at the end of fifteen years thereafter and before the commencement of this action.

Appellees insist that the deed from Wm. Ratliff, Sr., to his daughter, Ann Eliza May, in 1846, passed the fee

simple and not a life estate only, and rely upon the opinion in the case of Ratliff v. Mars, 87 Ky. 26, in which a deed in almost identical terms to the one under consideration was held to convey the fee.   The grantor in that deed made in 1848 appears to be the same Wm. Ratliff who made the deed to his daughter, Ann Eliza May, in 1846.   While the opinion in the case of Ratliff v. Mars, *supra,* sustains the position of appellees it has long since been expressly overruled, and was at the time of its delivery and now out of harmony with the prevailing rule in this state, as often expressed before and since the opinion in that case was delivered in 1888. Clearly the deed from Wm. Ratliff, Sr., to his daughter, Ann Eliza May, conveyed a life estate only to Ann Eliza, with remainder to her children.   Baskett v. Sellars, &c., 93 Ky. 2; Atkins v. Baker, 112 Ky. 877; Faulkerson v. Porter, 32 Ky. L. R. 676; Wilson v. Moore, 146 Ky. 679.

Even if overruled, appellees say the opinion estops the court by the rule of *stare decisis* to now otherwise hold, because property rights have vested upon confidence in the correctness of that opinion, and must not now be disturbed.   That is true as to the lands involved in that case, but since Joel Ratliff acquired his interest in the lands in controversy in 1882 and 1887, which was before the opinion in question was delivered, in 1888, he can not well claim he was relying upon it.   The established rule on the subject in this state was the same in 1882 as now, and *stare decisis,* therefore, can not be invoked.

Wherefore, the judgment is affirmed.

Whole court sitting.