## Foster et al. v. Armstrong et al.

(Decided June 19, 1931.)

THEOBALD & THEOBALD for appellants.

DYSARD & TINSLEY for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

On September 17, 1928, Bettie Foster and W. D. Foster, her husband, and Dr. M. W. Armstrong and Ellen Armstrong, his wife, entered into a written contract for the exchange of certain real estate. The contract reads as follows:

> "An article of agreement entered into this the 17th day of September, 1928, by and between Bettie Foster and Dee Foster, of Olive Hill, Carter County, Kentucky, parties of the first part and M. W. Armstrong and Ellen Armstrong, of Olive Hill, Carter County, Kentucky, parties of the second part;
>
> "For and in consideration of an even exchange of real estate hereinafter described between the parties hereto: the second party to assume a mort-

gage of $7000.00 Dollars, and the first party to assume the paving, and each parties represent that their real estate is free from all incumbrance except as above stated.

"Real estate of first parties, A 250 acre farm located in Clermont County, Ohio, and known as the Weaver Brothers farm.

"Real estate owned by the second parties, Residence known as the W. J. Fields dwelling and three other small houses on Woodside Ave. and what is known as the Denues brick dwelling two Lewis White properties, and what is known as the old Baptist Church property, and the brick building opposite the Stamper Hotel, on Rail Road St.

"Each of the said parties are to have 10 days to investigate the titles of the above described real estate, and if the title is good and as above stated then each is bound to make the necessary deeds to each other.

"Bettie Foster<br>
"W. D. Foster<br>
"M. W. Armstrong<br>
"Ellen Armstrong.

"In this agreement M. W. Armstrong is to hold possession of the house he now lives in to January 1st, 1928, Armstrong is to pay year 1928, taxes against Ohio farm, and W. D. Foster is to pay Armstrong's taxes year 1928, Armstrong is to collect all rent to Oct. 1st, except the old bank building which is to be 10 or 12th Oct, Armstrong reserves the right to prosecute the pending Law suit against the city of Olive Hill."

Provisions appearing below the signatures of the parties were written by, or at the suggestion of, M. W. Armstrong after the contract had been signed.

It appears that the legal title to the Ohio land was not in the Fosters, but they had purchased it from Roy Jackson and they had Jackson to execute a deed to the Armstrongs. This deed was executed on September 21, 1928. On the same day the Armstrongs executed deeds to their property located in Olive Hill, and the deed from Jackson to the Armstrongs and the deeds from the Armstrongs to the Fosters were delivered in escrow to B. F. Thompson, an attorney at law. On September 29, 1928,

the Fosters brought this suit against the Armstrongs for specific performance of the contract.

In their answer the defendants alleged that before the contract for the exchange of real estate was signed it was agreed by and between the parties that the defendant Ellen Armstrong, wife of M. W. Armstrong, was to have ten days in which to go to Clermont county, Ohio, and inspect the farm for which she and her husband were exchanging their property at Olive Hill, and if she was not satisfied with it the exchange of real estate was not to be made, and that by mutual mistake of the parties or fraud upon the part of the plaintiffs, this provision was omitted from the contract. It was further alleged in their answer that the deeds were executed and deposited in escrow with B. F. Thompson with the understanding that if Mrs. Armstrong was not satisfied with the farm when she inspected it, the deeds would not be exchanged but would be returned by Thompson to their respective makers; that the deeds were executed by the defendants and placed in the custody of Thompson pursuant to this understanding; that thereafter Mrs. Armstrong went to Clermont county, Ohio, inspected the farm, found that it was of little value, and notified Thompson that she was not satisfied with it and not to deliver the deeds executed by herself and husband to the plaintiffs. The defendants prayed that the written contract of September 17, 1928, be re-formed; that plaintiffs' petition be dismissed; and that Thompson, who had been made a defendant, be required to surrender to the Armstrongs the deeds which they had left with him.

The defendant Dr. M. W. Armstrong died in February, 1929, and the action was revived against his heirs at law. Thereafter the defendants filed an amended answer and counterclaim in which they alleged that Dr. Armstrong, at the time he signed the contract on September 17, 1928, was of unsound mind and mentally incapable of entering into such a contract. A second amended answer was filed in which it was alleged that pending the action Roy Jackson and wife had conveyed the Ohio land, known as the Weaver brothers' farm, to J. W. Mitchell, who had paid Roy Jackson the full purchase price for it, and had a deed upon record in Clermont county, Ohio, and was then in possession of the land, and that he was a bona fide purchaser.

A large amount of proof was taken on each of the issues raised by the pleadings, and the chancellor found

that the proof sustained each of the three defenses interposed by the defendants, and entered a judgment dismissing plaintiffs' petition. From the judgment the plaintiffs have appealed.

A careful reading of the record leads to the conclusion that the chancellor was correct in each of his findings. The evidence satisfactorily shows that the value of the property owned by the Armstrongs in Olive Hill, which was to be exchanged for the Ohio farm, was approximately $25,000. Appellant W. D. Foster testified that he valued the Clermont county farm at $36,000, but by the preponderance of the evidence it is shown that it is worth from $7,500 to $8,500. A number of disinterested witnesses who live in Clermont county, Ohio, near this land, and who are acquainted with its value and the value of other land in the neighborhood testified that it was worth from $7,000 to $9,000. When it is remembered that the Armstrongs were to assume a $7,000 mortgage on this land, it will be observed that they were receiving little, if anything, for their property. Several witnesses testified that it was a part of the agreement that Mrs. Armstrong should have an opportunity to visit the farm in Ohio and if not satisfied with it the exchange of the properties should not take place.

B. F. Thompson, who wrote the contract of September 17, 1928, as dictated by appellant W. D. Foster, and who prepared the deeds, testified that the Armstrongs were unwilling to sign the deeds unless it was agreed that they should be left with Thompson until Mrs. Armstrong could visit the Ohio farm. When the deeds were executed Thompson wrote the following receipt and delivered it to Armstrong:

"Received from M. W. Armstrong his several deeds in escrow and I am to hold same until the said M. W. Armstrong and wife visit the farm and if they are both satisfied with it and find the title to it clear, then each party is to pay taxes on the land received by them in the trade, Jackson and Foster to pay Mrs. Armstrong's way to Batavia and to farm and return. This is all agreed to by the parties, Foster and Armstrong delivered the deeds in the trade to me under the conditions as above stated. This 21st day of September, 1928.

"Ben F. Thompson, Attorney at Law."

While this receipt was not signed by any of the parties, W. D. Foster was present when it was prepared and signed by Thompson.

Viewing all the evidence in the light of the surrounding circumstances, we conclude that the chancellor was amply justified in reforming the contract of September 17, 1928, so as to include the provision that Mrs. Armstrong was to have an opportunity to visit the farm and if she was not satisfied the exchange of properties was not to take place. With this view of the case it becomes unnecessary to discuss in detail the other defenses set up by the Armstrongs, but suffice it to say that the overwhelming weight of the evidence is to the effect that Dr. Armstrong on September 17, 1928, was mentally incapable of entering into the contract.

As to the defense set up in the second amended answer, it is conceded that Jackson, pending the litigation, conveyed the Ohio farm in question to J. W. Mitchell. Jackson testified that he informed Mitchell when he delivered the deed of the pendency of this action, and it is argued that Mitchell is therefore a purchaser with notice and that appellees' rights will not be disturbed. Neither Jackson nor Mitchell is a party to this action and Mitchell would not be bound by any judgment that might be entered. He is not precluded from asserting title to the property and from claiming that he was a purchaser without notice.

The title now offered to appellees is not clear. Before a vendor of real estate is entitled to specific performance of a contract, he must be ready, able, and willing to transfer a marketable title, and a court of equity will not compel a vendee to accept a title about the validity of which there is a reasonable doubt and which may involve him in litigation. Milan v. Young, 211 Ky. 714, 277 S. W. 1018; Lowther-Kaufman Oil & Coal Co. v. Gunnell, 184 Ky. 587, 212 S. W. 593; Garth v. Runner (Ky.) 121 S. W. 681; Early v. Douglass, 110 Ky. 813, 62 S. W. 860, 23 Ky. Law Rep. 298. So that, in any view of the case, we are clearly of the opinion that the plaintiffs failed to sustain their cause of action and show that they were entitled to a decree for specific performance.

Wherefore the judgment is affirmed.