## Jackson v. Lamb's Ex'r.

March 2, 1945.

George C. Robbins for appellant.

D. Andrew Shearard for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Reversing.

On August 18, 1943, Levi Lamb's executor, appellee herein, exposed for public sale a farm consisting of about 275 acres located in Madison County, Kentucky, at which time O. P. Jackson, appellant herein, became the highest and best bidder at the purchase price of $6,135. A memorandum of the sale was signed by the auctioneer, the appellant and appellee, and ten per cent of the purchase price, or the sum of $613.50 was paid on the day of the sale. The appellant, being a lawyer, examined the title to this property and found a timber reservation in the deed to Levi Lamb, whose executor was making the conveyance. He informed the auctioneer and executor of this fact and demanded the return to him of the $613.50, theretofore paid, which was refused. The appellant then brought suit against the appellee seeking to recover this sum and in his petition sets out the above facts, with the further allegations that there was a large amount of timber on the farm; that in the printed advertisements of the farm, the timber was advertised as an inducement to prospective purchasers; that the executor was unable to execute and deliver to him a good title to this property.

The defendant below demurred to the plaintiff's petition and also filed an answer and counterclaim, in which he alleged, in substance, that the timber reservation must be construed to mean only the merchantable timber that was on the land at the time of the execution of the deed on November 21, 1906, and that Levi Lamb's grantor, the Richmond Cooperage Company, was a corporation, and that its Articles of Incorporation have expired and the right under the reservation lost. The defendant further alleged, that since the reservation was a part of the recorded deed, the plaintiff was charged with knowledge of it and would be compelled to take the property regardless of whether or not the deed was defective.

The plaintiff demurred to the defendant's answer and counterclaim, which was overruled by the court. The plaintiff then elected to stand on the general de-

murrer, and, refusing to plead further, the court ordered and adjudged the petition of the plaintiff be dismissed, and that the defendant, Levi Lamb's executor, recover from the plaintiff the sum of $5,521.50, being the balance of the purchase price, with interest thereon from January 1, 1944, until paid, and adjudged a lien upon the property to secure said amount, and ordered and directed the master commissioner to sell the property to satisfy the debt. From this judgment the plaintiff appeals.

A proper consideration of this matter requires a direction of our attention to the contentions made by the defendant in his answer and counterclaim. The appellee admits that the Richmond Cooperage Company, a corporation, in its deed to Levi Lamb in the year 1906, had the following reservation: "The first party also expressly reserves from this deed all the white oak, Chestnut oak and hickory on said land, and is to have the right to put a mill thereon to saw up said timber and other timber which he may buy in the immediate vicinity, and to do all other acts which its agents or assigns may deem necessary to the property and an *econical* handling of said timber. But in doing so is not to unnecessarily injure the land of second party." He contends, however, that the deed must be construed only to mean the merchantable timber on the land at the time of the conveyance, which the Richmond Cooperage Company must have removed within a reasonable time, and that since such time has long since past, the reservation is therefore of no effect. In support of that contention, appellee cites a number of cases, all of which are in point were there a litigation pending between the executor of Levi Lamb and the Cooperage Company or its assigns or successors in interest, involving their rights, if any they have, under the reservation. In the instant case, this is an action between a purchaser at public auction and the vendor, wherein the purchaser is demanding, and has a right to demand, a clear title to the property so purchased. The very fact that it becomes necessary for the vendor to set up a proposed defense to the reservation of the timber clearly indicates the possibility of some future litigation.

The appellee contends further that even though the reservation may be binding, it is now of no effect since the 20 years during which the corporation was to exist have expired. In view of the well-settled rule as to the vesting of property of a corporation upon dissolution,

it is unnecessary to discuss that matter here as we cannot try a case between any succeeding parties in interest of the corporation who are not parties to this action and who might have some future cause of action as against the owner of the land involved.

The appellee further contends that regardless of whether or not the title was defective, the appellant was obliged to take the land and accept the title since the deed from the Cooperage Company to Levi Lamb was a recorded instrument carrying with it a constructive notice of every statement in the instrument. In support of that contention, he cites the cases of Sansom v. Edwards, 148 Ky. 503, 146 S. W. 1106; Loeb v. Conley, 160 Ky. 91, 169 S. W. 575, Ann. Cas. 1916B, 49; May v. Chesapeake & O. R. Co., 184 Ky. 493, 212 S. W. 131, all of which pointedly support his contention, providing the facts and circumstances in the case at bar were in keeping with the facts and circumstances supporting those cases. In the recent case of Cox v. Birchfield, 299 Ky. 250; 185 S. W. 2d 256, 258, the court stated as follows: ''The consensus is that the strict rules applicable to deliberative contracts do not govern a sale of real estate at auction. Unless it is otherwise publicly proclaimed, or by printed terms published, it is presumed that purchaser shall have opportunity to investigate and inquire into the title. There is no evidence of any disclosure of these restrictions in announcement of terms of sale or in advertisement of same. The existence of such unannounced restrictions is proper grounds for the recission of a contract entered into at an auction.''

In the instant case the record shows that the advertisement of the sale contains the following: ''This farm contains about 250 acres, 50 or 75 acres timber land, lots of saw timber on it,'' * * * It further contains this sentence: ''This farm has only changed owners once in the *last* 100 years.'' The above two statements, obviously, would lead any prospective purchaser to believe that he was getting the land with an unquestionable right in the timber, and a deed with a perfectly clear title since the land had not changed hands but once in a hundred years.

The question, then, resolves itself into whether or not in this action, to which the Cooperage Company, its assigns or successors, or stockholders upon dissolu-

tion are not parties, the court can decide a matter that would affect their rights, if any they had. It is the universal rule that a vendee cannot be required to perform his part of a contract unless the vendor can convey a good and marketable title. The test of such marketability will depend upon the certainty or uncertainty of the title. It appears to us that a vendee should have a right to refuse the acceptance of a deed from a vendor not only where the title is defective in fact, but even if the title is one about which there arises even a reasonable doubt. It hardly appears to be right, just, or equitable to impose upon a purchaser the risk of litigation, even though it appears very likely and probable that as a consequence of the litigation the title might be declared good. In other words, equity will not compel a man to buy a possible lawsuit. In the instant case the question immediately arises as to such possibility. Certainly no one can here say what any party succeeding to the rights of the Cooperage corporation will do or might do. The test of reasonable doubt is clearly set out in 49 Am. Jur. Page 113, Paragraph 96:

"A vendee should have a title that will enable him to hold the land purchased free from the probable claim by another, a title which, if he wished to sell, would be reasonably free from doubt. * * *

"Specific performance may be refused where there is a suspicion that persons not made parties to the action may have an interest in the property. It is immaterial that it is doubtful whether the defect will ever incommode the purchaser. If there is any reasonable chance that some third person may raise a question against the owner of the estate after the completion of the contract, the court considers this a circumstance which renders the bargain a hard one for the purchaser, and one which it will not, in the exercise of its discretion, compel him to execute. If there is doubt or uncertainty about the title sufficient to form the basis of litigation, the vendee will not be required to accept it." This court in Powell v. Hester's Devisees, 271 Ky. 838, 113 S. W. 2d 456, 459, said: "It is the settled rule that specific performance will not be decreed even if it appears to be reasonably doubtful that the grantors can make a clear title, and a court of equity will not compel a vendee to accept a title about the validity of which there is doubt and which may involve him in litiga-

510

tion. Foster v. Armstrong, 239 Ky. 719, 40 S.W.2d 337; Williamson et al v. Ingram, 243 Ky. 749, 49 S.W.2d 1005."

We are forced to conclude that under the existing circumstances there are grounds for reasonable doubt, and the grantor cannot make a sufficiently clear title as would entitle him to compel a purchaser to accept same. We are of the opinion the court erred in overruling the demurrer of the plaintiff below.

Judgment reversed.