## Hunn, Jr., et al. v. Stiffney.

(Decided October 12, 1920.)

### Appeal from Lincoln Circuit Court.

1. Ejectment—Title to Support Action.—If in an action of ejectment the plaintiff's title is denied and the title claimed by him to the land be one of record, he must prove it by the duly recorded evidence thereof, deducible from the Commonwealth. However, title, or such ownership of land as will be as good as a paper title of record, may be established by satisfactory proof of the plaintiff or his vendor's actual, peaceable and continuous possession of the land, adversely to the defendant and all others, for as much as fifteen years prior to the institution of the action putting the title in issue.

2.  Ejectment—Title to Support Action.—One cannot acquire title to land owned by another through its purchase and a deed of conveyance from a tenant of such owner in possession of the land, in the absence of a renunciation by the tenant of his tenancy, with notice thereof to the owner, followed by the tenant's actual, peaceable and continuous possession of the land, adversely to the owner, his heirs or vendees and all others, for as much as fifteen years before its sale and conveyance by the tenant to his vendee.

3.  Ejectment—Title to Support Action.—As in this case the appellee claimed title to the land in controversy through mesne conveyances from a remote vendor, to whom it was sold and conveyed by a tenant of the owner in possession, and such sale, according to the evidence, was not preceded by the tenant's renunciation of his tenancy, nor followed by fifteen years' actual, peaceable and continuous possession of the land by him and his vendees, adversely to the owner and his heirs at law, before the institution by the latter of this action to recover the land, the ruling of the trial court in directing a verdict for appellee constitutes reversible error. On the evidence adduced a directed verdict for the appellants would have been proper.

JAY W. HARLAN and E. H. PURYEAR for appellants.

PETER McROBERTS for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellants, Jess Hunn, Jr., and others, children, grandchildren and only heirs at law of Edward Hunn, deceased, in this action in ejectment, brought by them against the appellee, Cora Stiffney, in the court below, sought to recover of her the possession of and rental for about one acre of land lying in Lincoln county, particularly described in the petition; wherein it was alleged that appellants own the land, hold the title thereto and were entitled to the immediate possession thereof, which was and is, as further alleged, without title or legal right claimed and held by appellee.

The answer of the latter denied appellants' title to the land, also their right to its possession; alleged her ownership of the land and right to the possession thereof; and pleaded the statute of limitations of fifteen years in bar of appellants' claim of title. By agreement of the parties, all affirmative matter of the answer was controverted of record. Appellants and appellee are all of the negro race. On the trial the circuit court at the conclusion of appellants' evidence, on appellee's motion and over the appellants' objection, peremptorily instructed the jury to find for her, and such was their

verdict. The judgment entered in approval of the verdict dismissed the action and awarded appellee her costs. Appellants thereupon filed motion and grounds for a new trial, the overruling of which by the court resulted in their prosecution of this appeal.

The single question presented for decision on the appeal is, was the granting by the trial court of the peremptory instruction directing a verdict for the appellee, authorized by the evidence? It must be conceded that, in an action of ejectment, a denial of the plaintiff's title by the defendant, places upon him the burden of proving the superiority of his title; in other words, he must recover, if at all, upon the strength of his own title and not the weakness of that of his adversary. But while this is true there is more than one method of establishing title. If the title relied on by the plaintiff be one of record he will be required to prove it by the duly recorded evidence thereof, deducible from the Commonwealth, whether such evidence of title be in the form of deeds of conveyance, patent or patents. However, title or such right of ownership as will be as good as a paper title of record, may also be established by satisfactory proof of the claimant's actual, uninterrupted and continuous possession of the land, adversely to the former owner or owners of the title and all others, for as much as fifteen years prior to the institution of the litigation putting the title in issue, which is the period of time fixed by the statute of limitations of this state for barring an action to recover land. In this case the appellants' evidence established the facts that in 1867 a tract of land, of which the parcel in controversy is a part, was by proper deed conveyed their ancestor Edward Hunn by Wm. Smith and wife; that the land was by a joint deed conveyed to Wm. Smith in 1865 by John A. Bogle, his wife, Chloe C. Bogle, P. W. Logan and the latter's wife; and that in 1862 the same land was by proper deed conveyed Chloe C. Bogle by R. G. Masterson, to whom it was allotted, as therein recited, by commissioners in a division made of Wm. Masterson's lands in 1861. It does not appear why Logan and wife united with Bogle and wife in the conveyance of the land to Wm. Smith, Edward Hunn's immediate grantor.

The several deeds referred to were read in evidence by the county clerk from the deed books of his office containing them; but, although he gave testimony regarding the action brought in the Lincoln county court to partition the lands of Wm. Masterson, deceased, and of the

report of the commissioners, then in his custody, showing its division and their allotment to R. G. Masterson, Edward Hunn's remote grantor, of the tract containing the parcel of land in controversy, it is not clear from the bill of evidence that the report or judgment entered therein was read to the jury or that the deed made R. G. Masterson conveying him the land allotted him, was read.

The evidence shows that appellants' ancestor, Edward Hunn, died in the year 1898, and that he was never, by its sale or otherwise, divested of whatever title he obtained to the parcel of land in controversy through the several deeds mentioned as having been introduced in evidence by appellants; and it is not denied by appellee's answer that appellants are his only heirs at law. So while these deeds do not manifest a title in the appellants of record deducible from the Commonwealth, they do establish in them title traceable back to the deed made by R. G. Masterson to Chloe C. Bogle, February 1, 1862, a period of 58 years. What character of possession accompanied such holding of the legal title by appellants and their ancestor will presently be considered by us.

Appellee's claim of title is based upon certain deeds which her counsel, on the cross-examination of the county clerk, introduced in evidence on the trial, and on the alleged adverse possession of the land by herself and vendors. These deeds all purport to convey the land in question, the first appearing on its face to have been executed January 29, 1903, by one Charles Bailey to Guy Hubble; the second from Guy Hubble to Candice Givens, November 28, 1908; the third from Albert Givens and Tine Givens, children of Candice Givens, deceased, to Mattie Bright, February 13, 1917; the fourth from Mattie Bright and husband to the appellee, Cora Stiffney, March 2, 1918. The parties to these four deeds were and are also of the negro race.

There was no proof whatever, or even claim on the part of appellee, that Charles Bailey ever held the land under a deed or other writing. On the contrary it was overwhelmingly shown by the evidence that he was permitted by appellants' ancestor, Edward Hunn, to go upon the land a few years after his (Hunn's) purchase of it and remain thereon as his tenant. Hunn resided nearby on land of his own, of which this small piece was a part, and for some reason not shown by the evidence, he seemed to have had such an affection for Bailey, who was homeless and without property, that he invited him to remove with his family to this land and occupy a house thereon

as a home free of rent the remainder of his life, which invitation was accepted by Bailey and immediately followed by his removal with his family to the land, where he remained without payment of rent until Hunn's death and for some years later. According to the evidence, which was uncontradicted, this arrangement was entered into by the parties with the understanding between them that Bailey would acquire no right to the land by his residence upon it, but would thereby become and be Hunn's tenant while he remained in possession thereof, and that such possession would continue while he lived or until the return of the property should be demanded by Hunn. This agreement was never reduced to writing, but under its terms Bailey became when he moved upon the land, and remained while he continued in possession thereof, the tenant at will or by sufferance of Edward Hunn, and after the latter's death the tenant at will or by sufferance of the appellants as his heirs at law, which tenancy might have been terminated at any time by Hunn or the heirs at law. According to the evidence, however, the latter on account of their respect for the wishes of their ancestor, permitted Bailey to continue in possession of the land as their tenant several years after the death of the former, and in fact until he finally voluntarily left it.

There is no contrariety of evidence as to the fact that Edward Hunn, either in person or through his tenant Bailey, had and held the actual, peaceable and uninterrupted possession of the land in question, adversely to all others, from the time of its purchase by and conveyance to him in 1867 until his death in 1898, thirty-one years later. Nor is there any contrariety of evidence as to the further fact that Bailey continued in like possession of the land following Hunn's death, with the exception of perhaps a residence of a year or two in Danville after the execution by him of the deed purporting to convey it to Guy Hubble, until his own death in 1917. It also appears from the evidence that Bailey's possession of the land was uninterrupted by the execution of the deed from him to Hubble, excepting his stay in Danville, or, by the following several mesne conveyances by which it is claimed the title was obtained by appellee.

It is insisted for appellee that although Bailey's possession of the land continued after the date of the deed he made Hubble, such possession was as a tenant of Hubble and the latter's subsequent vendees, immediate and remote. But this contention cannot be sustained.

for his previous possession of the land as the tenant of Hunn and appellants as his heirs at law, prevented him from attorning to another or others, until he had renounced tenancy under appellants.

The record furnishes no evidence tending to prove that Bailey ever claimed title to the land, or that he ever renounced his tenancy thereof under Edward Hunn or appellants. This, to say nothing of his having no interest in the land that could be the subject of sale, he must have done before he could attorn to Hubble or the latter's vendee, by taking possession of the land as a tenant under him or them, and such renunciation could only have been made either by Bailey's announcing it to appellants and restoring the land to them, or by acts or conduct on his part so notoriously hostile as necessarily would give them notice of the renunciation of his tenancy. 24 Cyc. 944; King v. Hill, etc., 32 R. 1192; May, et al. v. Chesapeake & Ohio Railway Co., et al., 184 Ky. 504, 32 R. 1192, 111 S. W. 293, 118 S. W. 312.

If Bailey's possession of the land was not hostile to appellants, there is no ground for saying that it can be relied on by appellee to defeat their recovery of the land. Even if the act of Bailey in conveying the land by deed to Hubble could be said to have operated as a renunciation of his tenancy under appellants, the recording of which gave sufficient notice to them of the renunciation, and that the continued possession of the land by Bailey was as a tenant of Hubble and his vendees and therefore adverse to appellants, as it does not appear from the evidence, when the deed was recorded, it furnishes no information from which to determine when the statute of limitations began to run, if at all, in her favor. It will be found from the record that the deed from Bailey to Hubble was introduced in evidence and the body of the instrument read, but that the certificate of the county clerk showing how and when it was recorded was not read or considered read, and all the appellants testified that they did not learn of the execution or existence of the Hubble deed or the others under which appellee claims title, until the year 1918, which testimony is uncontradicted. But if it were conceded as a matter of law that Bailey, from and after the execution of the deed to Hubble, was his tenant and that of his vendees and that his possession of the land from that time was adverse to the appellants, there would still have to be deducted from the time intervening between the date of the deed and the institution of this action the one or more years' ab-

sence of Bailey and his family from the land while residing at Danville, which would break the continuity of the adverse possession of the land claimed by appellee for herself and vendors and reduce it to less than fifteen years, the statutory period of limitations.

On the other hand, under our view of the record in this case, we may lay aside appellants' claim of a sufficient paper title, and yet find it shown by the evidence that their possession of the land, which was actual, peaceable, continuous and adverse to appellee, her vendors and all others, covers a period of not less than fifty-six years.

On the evidence presented, the instruction from the trial court directing a verdict for appellee was unauthorized, hence the judgment is reversed and cause remanded for a new trial and such further proceedings as may not be inconsistent with this opinion.