## James P. Combs v. Emaline Grigsby, et al.

## Emaline Grigsby, et al. v. Sampson Combs, et al.

(Decided June 22, 1923.)

### Appeals from Perry Circuit Court.

1. Limitation of Actions—Cancellation of Deed for Fraud is Barred in Ten Years.—In a suit to cancel a deed executed by the ancestor of the parties to a son, and to divide the land between the heirs of the ancestor, the action, in so far as it seeks to cancel the deed, is not an action for the recovery of real property, to which the limitation of Kentucky Statutes, section 2505, applies, but is an action to cancel the deed because of fraud, governed by section 2515, requiring such action to be commenced within five years after the cause of action shall have accrued, and section 2519, providing that such cause of action accrues on the discovery of the fraud or mistake, but that no such action shall be brought ten years after the time of the making of the contract, or the perpetration of the fraud.

2. Deeds—Subsequent Deeds by Grantor Covering Small Part of Same Land Held Not to Show Incapacity or Disaffirmance.—Proof that, after the execution of the deed in controversy, the grantor executed other deeds, some of which, under the evidence, may have covered small portions of the land covered by the deed in controversy, but did not cover the residence on that tract, nor any substantial part of the land, was not evidence of lack of capacity to execute the deed in controversy, nor tantamount to a disaffirmance of that deed by the grantor.

3. Adverse Possession—Residence on Land With Grantee Held Not Disaffirmance or Adverse Possession.—Where the owner of land executed a deed conveying it to his son, evidence that grantor con-

tinued to live on the land with his son, but that the son took possession of the land as his own, and handled it as he pleased, and supported the grantor and his wife for the rest of their lives, does not show a disaffirmance of the conveyance by the grantor, nor defeat the grantee's right to the property by adverse possession.

4. Limitation of Actions—Disability of Some of Class Does Not Suspend Limitations Against Whole Class.—Where a cause of action accrues to a class, part of whom are sui juris, and part of whom are under disability, the disability of the part does not prevent the statute from running as to the whole.

5. Judicial Sales—Grantors of Purchaser Held Not Entitled to Any Portion of Tract on which they had Only a Lien.—Where the purchaser of land at a judicial sale assigned his bid to two of the sons of the former owner, who thereafter took a deed from a grantee of a part of the land covered by the sale, and procured a sheriff's deed therefor, but thereafter the former grantee had his deed to the assignees set aside, on repaying to them the amount they paid for the assignment of the bid, they are not entitled, as against the heirs of the original owner, to the portion of the land not conveyed by him to that grantee, since they acquired from the bidder no title to the land, but only a lien for the amount paid therefor.

6. Adverse Possession—Thirty Years' Possession Gives Title to Tracts Not Covered by Deeds.—In a suit for partition among the heirs of a former owner of land, the court properly refused to order the division of certain tracts claimed by two defendants, which were not included in the deeds to those defendants, where the preponderance of the evidence showed that the defendants had been in possession of those tracts for more than thirty years, and especially where the evidence did not show that plaintiff's ancestor ever had title to the land, but at most had only an equity therein by reason of payments on an oral contract for purchase, which the court charged on the land.

HOGG & JOHNSON and C. C. TURNER for James P. Combs.

H. C. FAULKNER & SON and W. A. STANFILL for Emaline Grigsby and others.

P. T. WHEELER and JOHN D. CARROLL for Sampson Combs and others.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing in part and affirming in part on the appeal of James P. Combs, and affirming on the appeal of Emaline Grigsby, et al.

This action was filed in the Perry circuit court by some of the heirs of Clinton Combs against other heirs of his for a division among plaintiffs and defendants of several described tracts of land alleged to have belonged

to Clinton Combs at his death, and to set aside certain deeds of conveyance to some of the described tracts made by Clinton Combs to his sons. Answers were filed by the defendants, denying that Clinton Combs owned any of the lands at the time of his death, also denying the averments of the petition as to fraud in procuring the deeds sought to be canceled, and affirmatively pleading the five, ten, fifteen and thirty years statutes of limitation in bar of the right of plaintiffs to maintain the action as to a cancellation of the deeds. Pleas in avoidance of these statutes were interposed by plaintiffs on the ground of coverture and other disabilities which, as they claim, suspended the operation of the statutes. On the issues made by the pleadings the chancellor dismissed the petition as to certain lands described therein, but sustained the plaintiffs' claim as to two tracts, from which James P. Combs, who claimed to be the owner of those tracts, has appealed. The plaintiffs have prosecuted an independent appeal against Sampson Combs and the children of William Combs on the ground that they were adjudged to be the owners of land that should have been divided among all the heirs.

On the appeal of James P. Combs two tracts of land are involved, one of which is designated in the record as the Mason Combs 400-acre survey, and the other referred to as the Elijah Cornett land. The 400-acre survey was patented by Mason Combs, the father of Clinton Combs, in 1810. After the death of his father Clinton Combs became the owner of that part of the survey lying on the east side of the north fork of the Kentucky river, and in 1891 conveyed it to his son, S. B. Combs, who in 1908 conveyed it to J. P. Combs. Clinton Combs died in 1900. He was then about 98 years of age, and the evidence shows that he had been very dissipated from his early manhood. It is contended by plaintiffs that when he deeded this land to S. B. Combs in September, 1891, he was of unsound mind, or at least was suffering from such mental infirmity as rendered him incapable of understanding the consequences of his act. Both of these contentions are denied by defendants. The chancellor held that Clinton Combs' mental condition was such as to render the deed voidable, but that it was in force until it was disaffirmed. He also held that it was disaffirmed by a subsequent conveyance of a part of the land to other children of Clinton Combs and by his retention of control of the property until the time of his death. As an addi-

tional ground for adjudging that the land belonged to Clinton Combs it was decided that limitation began to run against S. B. Combs when a part of the land was conveyed by Clinton Combs to John J. Combs, and continued until Clinton Combs' death in 1900 and during the lifetime of his widow, who died in 1910, during which time the title ripened by adverse possession in Clinton Combs and those claiming under him, and further, that S. B. Combs acquiesced in the disaffirmance by Clinton Combs and was therefore estopped from asserting title under the deed of 1891.

Starting with the proposition that the deed to S. B. Combs was not void but merely voidable, it is important, as we view the law, to consider the application of the statutes of limitation relied on by James P. Combs. This action has a twofold purpose, one of which is to divide the lands of Clinton Combs, including as alleged this tract, among his heirs, and the other to set aside the deed to this tract because of fraud in its procurement. As it pertains to the latter purpose this is not an action for the recovery of real property, to which the limitation of section 2505 of Kentucky Statutes applies, but it is an action to set aside a deed because of fraud.

Section 2515 of Kentucky Statutes provides that "an action for relief on the ground of fraud or mistake" shall be commenced within five years next after the cause of action shall have accrued, and section 2519 provides that "in actions for relief for fraud or mistake" the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake, but no such action shall be brought ten years after the time of making the contract or the perpetration of the fraud. As we have said, the deed of September, 1891, was not void, but at most only voidable. The title to the land passed under the deed from Clinton Combs to S. B. Combs. Hence it seems clear to us that the ten years statute of limitation is applicable; and, as nearly twenty-five years elapsed after the deed was made before this action was instituted, the claims of the plaintiffs are barred unless there is some reason why the statute did not run, or unless some one of the other grounds on which the judgment is based is sustainable.

The findings of fact on which the chancellor's decision rests are that the deed was procured by fraud and the overreaching of Clinton Combs, that it was subsequently disaffirmed by a later conveyance and the grantor's re-

tention of the control of the property, that S. B. Combs was divested of the title by the adverse holding of the land by Clinton Combs and his widow, and that S. B. Combs' acquiescence in the disaffirmance estops him from asserting claim of title under his deed. The first of these findings takes into consideration as potent factors the later conveyances to other children of what is said to have been the same land and to have included Clinton Combs' residence and all his lands. From our examination of the evidence we have been unable to conclude that any of these conveyances included Clinton Combs' home, or that the later conveyances to his sons, except the one to John J. Combs, included any substantial part of the land deeded to S. B. Combs. As to what part of the John J. Combs' tract was included in the tract conveyed to S. B. Combs the evidence is quite unsatisfactory. In view, however, of the opinion just expressed we do not regard the later deeds referred to as an evidence of lack of capacity to convey the property to S. B. Combs, or as tantamount to a disaffirmance of that conveyance. Furthermore, it is our opinion, from a consideration of all the evidence, that Clinton Combs in 1891 was not of unsound mind, nor suffering from such mental debility as rendered him incapable of making a valid deed.

This brings us to a consideration of the finding of a disaffirmance on the ground of Clinton Combs' retention of the control of the property, which is related to the question of such acquiescence in the disaffirmance by S. B. Combs as estops him from asserting any claim under his deed, and the further question of the acquisition of title by Clinton Combs by adverse holding after the execution of the deed of 1891. The evidence on these points is conflicting, but it is our view that it preponderates in favor of the contention that Clinton Combs did not retain possession and control of the land, but that S. B. Combs took possession of it, cultivated and used it as he pleased, and supported Clinton Combs and his wife so long as they lived. Having reached that conclusion, it must be held that there was not a disaffirmance of the conveyance nor a divesting of S. B. Combs' title by any adverse holding, and in consequence no acquiescence on the part of S. B. Combs in any act or conduct that estops him from maintaining his rights under his deed.

But it is said that the deed may be attacked on the ground of fraud in its procurement notwithstanding the

ten years statute of limitation, because at the date of Clinton Combs' death the limitation had not expired and some of the plaintiffs were then and are now subject to the disabilities of coverture and infancy. However, it appears that several of the plaintiffs were not subject to any disability at the time of Clinton Combs' death, and it is a well-settled rule that where a cause of action accrues to a class, part of whom are *sui juris* and part of whom are under disability, the disability of a part does not prevent the statute from running as to the whole. Moore v. Calvert, 6 Bush 358; May v. C. & O. Ry. Co., 184 Ky. 504; Henderson v. Fielder, 185 Ky. 485.

It follows that the statute operates as a bar to the action to set aside the deed, and accordingly it was error to adjudge that the land in question constituted a part of the estate of Clinton Combs.

As to the second tract involved on the original appeal, it appears that on July 8, 1892, it was conveyed by Clinton Combs to his son, J. J. Combs. Prior to that time it had been sold under execution against Clinton Combs in favor of E. C. Cornett, but Cornett had agreed that the land might be redeemed. After J. J. Combs acquired the deed from his father he went to Cornett to redeem the land, but before he could pay the money J. P. and D. Y. Combs paid Cornett and took a transfer of his bid. They afterwards procured a deed from J. J. Combs, and they had the sheriff make Cornett a deed to the land and Cornett to make them a deed. Subsequently J. J. Combs instituted a suit in the Perry circuit court to set aside the deed made by him, and a judgment was entered granting him that relief. The case was appealed to this court and affirmed in Combs, etc. v. Combs, 23 Ky. Law Rep. 1264, the court holding that E. C. Cornett only claimed a lien on the land as against Clinton Combs, and that J. P. and D. Y. Combs stood in the shoes of Cornett. They were given a lien on the land for the amount that they had paid Cornett. The evidence shows that they accepted payments on that lien as late as 1909 or 1910, and that it was finally extinguished.

It is said, however, that the purpose of the suit by John J. Combs was to set aside the deed which he had made to J. P. and D. Y. Combs, and that suit in no wise involved the title to that portion of the tract conveyed by Cornett to J. P. and D. Y. Combs not embraced in the deed of Clinton Combs to John J. Combs. Accordingly it is contended that the court should have adjudged

James P. Combs the owner of that part of the tract not
included in the deed from Clinton Combs to John J.
Combs. We are unable to subscribe to this view of the
effect of the opinion of this court in Combs, etc. v. Combs,
*supra,* for, as pointed out in that case, Cornett only
claimed a lien on the land, and it was held that the only
interest that J. P. and D. Y. Combs obtained under their
assignment of Cornett's bid was a lien on the land for
the amount that they paid Cornett. They acquired no
title whatever, and, since James P. Combs is claiming
this land through the assignment of Cornett's debt and
the deed from John J. Combs, it is apparent that his
claim cannot be sustained, and in this respect the judg-
ment of the court is right. ·

The appeal of the plaintiffs involves several tracts of
land claimed by and adjudged to Sampson Combs and
the children of William Combs. These lands are re-
ferred to in the record as the Everidge lands. The evi-
dence tends to show that during the Civil War Clinton
Combs bought these lands, which adjoined his home
place, under a parol contract from A. C. Godsey. It
does not appear from any satisfactory evidence in the
record that he was ever given a deed or title bond to the
lands. However, he paid to Godsey several hundred
dollars at different times on the purchase price. In 1869
Godsey conveyed a large part of this property to his son,
D. S. Godsey, all of which D. S. Godsey conveyed in 1883
to Sampson and William Combs. In 1894 Sampson and
William Combs divided the property between themselves
by deeds which they executed and delivered. Sampson
Combs has since that time lived on his part of the land,
and William Combs resided on his part until his death,
since which his children have lived on it. Sampson and
William Combs and their children have been in the notor-·
ious, peaceable, continuous and adverse possession of the
Everidge lands since 1883, and also in possession of that
part of the two Baker tracts of 200 and 60 acres, respec-
tively, that was adjudged to them by the chancellor.

It is insisted for plaintiffs that inasmuch as the Eve-
ridge lands when owned by A. C. Godsey embraced eight
separate tracts or patents and the deed from D. S. God-
sey to Sampson and William Combs shows a conveyance
of only four tracts, the chancellor was in error in ad-
judging Sampson Combs and the children of William
Combs all of the Everidge lands. There are two com-
plete answers to the insistence. The first is that the pre-

ponderance of the evidence shows that all the land adjudged to appellees had been adversely held by them or their predecessors for such a length of time as to give them title by adverse possession prior to the death of Clinton Combs, through whom plaintiffs claim; and the second is that the evidence fails to show that Clinton Combs had title to the property at the time of his death or ever held title to it, although the chancellor found that he did have an equity in it which was given to William Combs and Sampson Combs, and for which they were charged in the judgment with $900.00. From the latter charge no appeal has been taken. But wholly aside from that question, it is sufficient to say that plaintiffs' claim to the Everidge lands cannot be sustained, because Sampson and William Combs had acquired title to them by adverse possession before the death of Clinton Combs, and Clinton Combs never had any title to them and certainly did not have title at the time of his death, the title at that time and when this suit was instituted being in Sampson Combs and William Combs or the latter's heirs at law.

From the foregoing it will be seen that the judgment as to James P. Combs is reversed in part and affirmed in part, and as to Emaline Grigsby and others as against Sampson Combs and the heirs at law of William Combs it is affirmed.