## Doss, et al. v. Woodson.

(Decided December 19, 1924.)

### Appeal from Muhlenberg Circuit Court.

1. Adverse Possession—Purchaser from Husband Who Claimed Absolute Title, Holding Possession for Statutory Period, Held to have Title by Adverse Possession.—Where husband purchasing land at execution sale under judgment against him, went into immediate possession, claiming it as his individual property, and after wife's death continued to hold it as his own, and not as life tenant or tenant by curtesy, and later sold to plaintiff by general warranty deed, and plaintiff held actual possession for some eighteen years, held, whatever defects of deed under judicial sale, plaintiff's title by adverse possession was good as against heirs of his grantor's wife.

2. Adverse Possession—Rule that Remaindermen have no Cause of Action Until Termination of Estate, Without Application, where Adverse Possessor's Grantor Claimed Absolutely, and Not as Tenant by Curtesy.—Rule that remaindermen have no cause of action against an adverse claimant in possession under grant from life tenant or tenant by curtesy until after termination of latter's estate, has no application, where husband claims not by curtesy, but holds possession of land purchased in his own name as his individual property, nor can such rule affect husband's grantee who takes and holds possession for requisite statutory time.

DOYLE WILLIS, WILLIS & TAYLOR and W. J. ROSS for appellants.

WALKER WILKINS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—Affirming.

Susan Doss was the mother of appellant, J. W. Doss. Her husband died in 1886, and she married David

B. Holland. Holland was insolvent. One Yost held a judgment against him upon which execution had been issued and returned "no property found." While this judgment was unsatisfied, Holland purchased the tract of land in controversy in this case from one Ross and wife, paying therefor out of his own funds the sum of $175.00, and for the purpose of circumventing his creditors he caused the deed to the land to be made to his wife. Soon thereafter a suit was instituted by the assignee of Yost against Holland and wife, alleging that Holland had furnished all the purchase money paid for the land and that he and his wife, for the purpose of defeating his creditors, entered into a scheme whereby she was to take and hold the title to the land, and, in pursuance to that fraudulent arrangement, caused the deed to be made to her; that she had no actual interest in it save as his wife and trustee. She answered and denied the averments of the petition and pleaded she bought and paid for the land. Holland appeared and adopted the answer of his wife. Upon final hearing the court adjudged the land the property of Holland and not that of his wife, and further that it be subjected to the payment of the Yost debt. The lands were described in the order and Wickliffe, the master commissioner, was directed to carry out the sale. That part of the judgment which ordered the sale, reads:

> "The purchaser to give bond with sufficient surety for the price payable to plaintiff, and bearing legal interest from date and have the force of a judgment. The time, place and terms of the sale shall be advertised by posting of written or printed notices thereof at the court house door in Greenville, and at three other public places in Muhlenberg county, fifteen days next before the sale. W. A. Wickliffe, master commissioner of this court, is hereby directed and empowered to sell said land as hereinbefore ordered and to convey to the purchaser the land when sold, and to report it to the court and confirmed by deed of conveyance, conveying the land sold and all the right, title and interest of the defendants and each of them therein."

Pursuant to this order the lands were sold to satisfy the judgment, Holland becoming the purchaser at the amount of the debt, interest and costs. The sale was

reported to the court and the matter dragged along for some time. Finally, the cause was stricken from the docket with leave to reinstate. Later it was reinstated upon the docket and Wickliffe, former commissioner, but not then in office, presented to the court, as special master, a deed to the purchaser which was duly signed and acknowledged as is the manner, and certified to the proper office for record. In the meantime Holland had paid the full purchase price. He continued to live on the farm with his wife. So far as the record shows she never asserted any title to the land after the judgment of the court holding the land to be the property of her husband, subject to the debts of her husband. Soon after Holland obtained his deed the wife died and he continued in possession of the land. About 1890 he sold the land to appellee Woodson and conveyed by deed of general warranty, putting Woodson in possession. Something more than eighteen years later and after the death of Holland, appellants, J. W. Doss, etc., children and heirs of Susan Doss, later Holland, began to assert claim to the lands on the theory that their mother was the rightful owner as well as legal title holder thereof at the time the original suit was brought to enforce the Yost judgment against Holland, and that their mother was not divested of title by that suit and judgment for the reason that the sale was void because made by a person not master commissioner and without authority to make such sale, and after more than five years from the date the cause was stricken from the docket after judgment. When these claims of the Doss heirs came to the ear of Woodson he commenced this action against them to quiet his title and to require them to release to him all claim they had to the lands. He relied both upon his paper title and title by adverse possession. The Dosses answered and set up their claim to the land and denied Woodson's title thereto. After issue joined the parties took proof. The clerk of the circuit court was called as a witness by each of them and required to produce his records concerning the old case, in which the Yost judgment was rendered and in which case the lands were ordered to be sold. There were several irregularities in the record leading up to that judgment. But we do not regard any of them as fatal. It would serve no useful purpose to go into a discussion of each of the several questions made concerning those irregu-

larities, since we have reached the conclusion that the judgment of the lower court quieting Woodson's title to the land must be affirmed upon other grounds.

As has been indicated, the Doss heirs insist that the lands were the property of their mother, and that the judgment entered by the Muhlenberg circuit court in the original suit was not sufficient to divest her of title, hence their mother continued to be the owner of the lands notwithstanding the judgment of the court, sale by the special master, execution and delivery of the master's deed and other steps taken in that action. Let that be as it may, Holland, the husband, purchased the lands in good faith and paid the consideration and accepted the deed for the absolute fee from the master commissioner. He went into immediate possession under that deed. Thereafter and for some years he lived on the property with his wife, claiming it as his own. His deed was of record. His wife asserted no claim to the property. Soon thereafter his wife died, and he continued to assert title to the property and to hold and use it as his own and not as a life tenant or holder of a curtesy. After some years and about 1900 he sold and conveyed the land to appellee Woodson, who entered under a general warranty deed from Holland and remained in actual possession, holding and claiming the land as his own against all the world. From that time until the bringing of this action, eighteen years later, Woodson possessed and claimed the land. He now insists, and we think rightfully so, that whatever the condition of the title at the time Woodson bought and took the land, his title by adverse possession has matured and appellants are barred by the statutes of limitation.

Appellants contest this claim of Woodson and assert that before the passage of the married woman's act, 1894, the husband took curtesy in all the lands of the wife for life only and in consequence of Holland having married appellant's mother he became invested upon her death with a life estate in the lands of his wife, and having become so invested he could not divest himself of such life tenancy and become an adverse claimant of the fee except and until he abandoned all connection with the life estate and re-entered as an adverse claimant. This claim, if supported by the facts, would be well founded. The trouble, however, arises

on the facts. Holland was in the actual possession of the land from and after the time he obtained the commissioner's deed, claiming and holding the same as his individual property. He never accepted or entered upon the lands as tenant by curtesy. He always asserted entire ownership. If he had entered as a life tenant by curtesy, the situation would have been very different and would have resulted just as appellants now contend. Having never so entered, but on the contrary claimed absolute title in himself, Holland was never a life tenant or tenant by curtesy, but an adverse claimant not only to his wife but to all persons whomsoever, honestly believing that his purchase and payment for the lands invested him with perfect title under the commissioner's deed. So we say that if it be conceded that the sale by the master commissioner of the land under the judgment in the original suit was irregular and void, it does not affect the rights of appellant Woodson who, through a long number of years much in excess of the statutory period, has adversely held and claimed the lands against all comers. Nor is his possession vulnerable by reason of the fact that Holland, the alleged life tenant, lived until a short time before the commencement of this action. It would be different, however, if Holland had been a life tenant, for we have held in the case of C., N. O. & T. P. Ry. Co. v. May, 184 Ky. 493, and other cases there cited, that the owners of the fee in remainder have no cause of action against an adverse claimant in possession until the termination of the life estate.

Both fact and law uphold appellee Woodson's claim and it must prevail.

Judgment affirmed.